The Indiana, Bloomington and Western R'y Co. v. Greene, Administratrix.

The clerk will give the necessary notice for the return of the prisoner to the custody of the sheriff of Ripley county.

Filed May 11, 1886.

No. 11,894.

THE INDIANA, BLOOMINGTON AND WESTERN RAILWAY COMPANY v. GREENE, ADMINISTRATRIX.

RAILROAD.—*Action for Injury at Railroad Crossing.*—*Contributory Negligence.* —In an action by an administrator, against a railroad company, to recover damages for causing the death of his intestate at a railroad crossing, it must be affirmatively shown, either directly or circumstantially, that the deceased was free from contributory negligence, to entitle him to a recovery.

SAME.—*Degree of Care Required.*—Extraordinary precaution is demanded of one who has knowledge that a railroad crossing is peculiarly dangerous.

From the Montgomery Circuit Court.

*C. W. Fairbanks, R. B. F. Peirce, W. T. Brush, P. S. Kennedy* and *S. C. Kennedy*, for appellant.

*J. M. Thompson, W. B. Herod, T. L. Stilwell* and *W. H. Thompson*, for appellee.

MITCHELL, J.—This action was brought by Sarah A. Greene, administratrix of the estate of Joseph W. Greene, against the Indiana, Bloomington and Western Railway Company, to recover damages for wrongfully causing the death of her intestate, who was also her husband.

She recovered a judgment in the court below. A reversal of that judgment is contended for upon two grounds:

1. Because it is said the evidence wholly fails to show that the deceased was free from contributory fault.

2. Because the case was put to the jury on an erroneous theory by the court in its instructions.

Although the record embraces nearly one thousand pages of testimony, some facts of controlling importance are undisputed.

The deceased at the time of, and for more than six months prior to, his death, was engaged in driving a public conveyance between the city of Crawfordsville and the town of Alamo. During this time he had regularly passed over the place where the accident occurred twice each week, and was familiar with the crossing and its surroundings, and with the running of trains on the appellant's railway. So far as appears no change in respect to these had occurred during that period. On the 12th day of March, 1883, while making his usual trip, he was seated on the front seat of a covered hack, in which he was carrying a gentleman and lady as passengers. At the point where the gravel road, along which he was proceeding, crosses the appellant's railway, his hack was brought into collision with one of the appellant's western bound passenger trains. The hack was demolished. The intestate and both passengers were almost instantly killed. No person who lived to give any account of the occurrence, except the engineer on the engine, witnessed the collision, so as to be able to describe the manner in which the deceased approached the crossing. The only evidence upon that subject, other than that given by the engineer, was to the effect that the decedent was seen some two hundred yards distant, driving in a "jog trot," in the direction of the crossing. The engineer testified that when he first saw the team and hack they were about fifty feet from the track, approaching it rapidly; that the driver was " leaning forward as though he was urging his horses," and that one of the horses was galloping and the other trotting. He reversed his engine and applied the airbrakes, but was unable to stop his engine in time to avoid the collision. There was no impeachment of this witness, nor was his testimony contradicted, although it is claimed that some of his statements are inconsistent with other facts testified to by him.

That the crossing was dangerous, and that, on account of a cut through which the track lay, the approach of trains from the east could be seen from the highway only by the exercise of more than ordinary prudence and vigilance, is plainly deducible from the somewhat conflicting evidence pertaining to that subject.

The engineer and fireman, as well as several persons who were passengers on the train, and others apparently disinterested who were in the vicinity, testified positively that the whistle was sounded and the bell rung when the train approached the crossing. While a number of persons equally credible, and with equal opportunities for hearing it, were no less positive that no warning whatever was given. In the state in which the testimony is presented on that subject, the jury might well have found, as they did, that no signal was given. It is not disputed that the train was running at a speed of forty miles an hour down-grade.

The salient points in the case, as gathered from the record, are thus presented. From this statement it will be seen that the plaintiff, in her evidence, accounted for the deceased in his progress along the highway toward the crossing, to a point about two hundred yards distant from the railway. Leaving him there, advancing upon the crossing in a "jog trot," nothing further is disclosed in her evidence as to the conduct of the deceased, until his lifeless body was taken up from the wreck of the collision. Whether he looked or listened, whether he slackened or accelerated his pace as he neared the crossing, can not be ascertained from any evidence in the record except that already referred to given by the engineer.

In support of the verdict, counsel say: "The plaintiff made her case upon the positive evidence of many witnesses, that the decedent, Joseph Greene, was run upon and killed by appellant's engine, at a crossing in a deep cut, while such engine (and train) was behind time, running at an unusual and dangerous rate of speed, and which approached said cross-

ing coming down a steep grade, without the sound of a whistle or bell as by positive statute required."

Conceding this much, the evidence still comes far short of making a case upon which a recovery can be maintained. It was absolutely essential that there should have been some evidence exhibiting the conduct of the deceased in approaching the crossing. In order to uphold the verdict, it must have affirmatively appeared, either directly or circumstantially, that he was free from contributory fault. Did he look or listen for the train, or did he continue on in a "jog trot" without thought of impending danger until horrified by the sight of the train, which was inevitably rushing upon him? Upon the plaintiff's case, these questions are left to be determined by conjecture. It is said, because nothing appears to the contrary, we are bound to presume that the deceased was in the exercise of proper care. This would be to supply by presumption that which an unbending rule of law requires should be established by proof.

The principles of law pertaining to actions of this nature were discussed in the recent case of *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31. It can hardly be necessary to recur to them again. It may suffice to say, since it is the established rule of this court, as it is of the courts in a large majority of the States, that it must be affirmatively shown that the injured party was in the exercise of due care at the time the accident occurred. At least, it must be made to appear that want of care on his part in no way contributed to bring about the injury, or helped to produce the accident for which compensation is sought. In the case of *Toledo, etc., R. W. Co.* v. *Brannagan*, 75 Ind. 490, which is analogous in principle, this court said: "Where the circumstances point just as much to the negligence of the deceased as to its absence, or point in neither direction, the plaintiff should be nonsuited." *Warner* v. *New York, etc., R. R. Co.*, 44 N. Y. 465; *Cordell* v. *New York, etc., R. R. Co.*, 75 N. Y. 330; *State* v. *Maine Central R. R. Co.*, 76 Maine, 357 (49 Am.

R. 622); *Lesan* v. *Maine Central R. R. Co.*, 77 Maine, 85; *State* v. *Maine Central R. R. Co.*, 1 New Eng. Rep. 286.

We find the rule well stated in the case of *Hinckley* v. *Cape Cod R. R. Co.*, 120 Mass. 257, thus: "Mere proof that the negligence of the defendant was a cause adequate to have produced the injury will not enable a plaintiff to recover, as it does not necessarily give rise to the inference of due care upon his part, proof of which is essential to his case." *Allyn* v. *Boston, etc., R. R. Co.*, 105 Mass. 77; *Hathaway* v. *Toledo, etc., R. W. Co.*, 46 Ind. 25; *Sherlock* v. *Alling*, 44 Ind. 184.

Many more authorities might be cited in support of the rule under consideration, but it can not be necessary. It is settled. The facts and circumstances, illustrating the conduct of the injured person at the time of the accident, must be made to appear. If from these the inference can be drawn that proper caution was exercised, it may then be said, the presumption of contributory negligence has been affirmatively removed.

Moreover, the proposition of counsel assumes that the testimony of the engineer is not to be considered. It proceeds upon the theory that the evidence of this witness in respect to the manner in which the decedent approached the track is to be rejected. We have been unable to discover anything in the record which justifies this assumption. It must be conceded that the testimony of this witness affords affirmative proof of negligence, rising to the degree of recklessness. It is said the place was one of peculiar danger, and for that reason, the misconduct of the defendant having been established, it can not be assumed that any reasonable precaution would have enabled the decedent to avoid the peril. As applied to the case of a person unacquainted with the crossing, and the danger incident to it, the argument would have weight. But in a case like this, where the deceased was acquainted with the locality and familiar with all the surroundings, it is not available. Having knowledge of the extraordinary danger—conceding that the crossing was peculiarly

dangerous—the most rigid prudence and extraordinary caution were demanded. His own safety required this; while his obligation to those who were helpless in his charge, and who perished with him, should have quickened his vigilance. *Cincinnati, etc., R. W. Co.* v. *Butler, supra; Bellefontaine R. W. Co.* v. *Hunter*, 33 Ind. 335 (5 Am R. 201); *Lake Shore, etc., R. R. Co.* v. *Miller*, 25 Mich. 274; *Haas* v. *Grand Rapids, etc., R. R. Co.*, 47 Mich. 401; *Pennsylvania R. R. Co.* v. *Beale*, 73 Pa. St. 504 (13 Am. R. 753); *Railroad Co.* v. *Houston*, 95 U. S. 697; *Schofield* v. *Railroad Co.*, 114 U. S. 615.

The observance of this precaution, on the part of persons crossing railway tracks, is of the highest importance, not only for their own safety, but for the safety of those travelling on railroads who are liable to be killed by trains coming in collision with obstacles on the track. The doctrine of the case of *Chicago, etc., R. R. Co.* v. *Boggs*, 101 Ind. 522 (51 Am. R. 761), neither cures nor helps out the infirmities in the appellee's case.

We notice briefly one of the instructions which is the subject of discussion. The court added, as a modification to an instruction asked by the defendant, the following:

"The allegation, that the injury occurred without the fault or negligence of the plaintiff's intestate, must be proved by the plaintiff, but at the same time it is a negative averment, and if the plaintiff has shown by the evidence that the injury occurred as charged, resulting in the death of the plaintiff's intestate, and that it was caused by the negligence of the defendant as charged, without showing any contributory negligence or ground for inferring or reasonably suspecting such negligence, she will be entitled to recover without making direct and affirmative proof on that subject. In the absence of circumstances to show or suggest it, there is no presumption of contributory negligence."

Within the principles already stated and the authorities

The Indiana, Bloomington and Western R'y Co. *v.* Greene, Administratrix.

cited, the instruction as modified was erroneous. We are reminded that the modification above set out is substantially a quotation from the opinion of this court, in *Pittsburgh, etc., R. R. Co.* v. *Noel,* 77 Ind. 110. That was an action against the railroad company for negligently setting fire to plaintiff's wood, which was piled along the company's track. Without considering whether the statement as applied to the case in which it was used, was entirely accurate, it is sufficient to say it is not correct as applied to this case. As was said in the later case, *Wabash, etc., R. W. Co.* v. *Johnson,* 96 Ind. 40: "It may be, and probably is, true that when there is evidence making it probable that the plaintiff's carelessness did not contribute to the injury, the jury should infer that he was not guilty of negligence which contributed to the injury." It will not do to say, however, as the instruction in effect does, that if the plaintiff can show the defendant's neglect and his injury, he may leave his own conduct to conjecture, and recover. He must show the facts, as well those which relate to his share in the transaction as those which relate to the defendant's, and if upon the whole case an inference of negligence arises against the defendant, and of due care on his part, he may recover. The fact that a person travelling on a highway comes in collision with a train on a railway crossing, is of itself sufficient to suggest a presumption of contributory negligence against him in a suit for compensation.

Questions are made with respect to other instructions given, but as it results from the conclusions already reached that the judgment must be reversed, we do not consider them.

Judgment reversed, with costs.

Filed April 20, 1886.