The Pittsburgh, Cincinnati and St. Louis Ry. Co. *v.* Bennett, Admx.

## No. 865.

### The Pittsburgh, Cincinnati and St. Louis Railway Company *v.* Bennett, Administratrix.

Tort.—*Negligence.—Matter of Proof.—Presumption.—Due Care.—Contributory Negligence.—Recovery.*—In an action in tort, the plaintiff must show not only that the defendant was guilty of a breach of duty causing the injury, but he must also establish, by proof, direct or circumstantial, that he was free from negligence contributing to such injury; and the proof of due care on the part of the plaintiff can not be supplied by the presumption of due care arising from the fact that a person is naturally inclined to avoid danger rather than to encounter it. Such presumption of due care may arise where there are facts and circumstances in evidence upon which the presumption could be properly based, but the facts and circumstances showing the conduct of the injured party at the time of the accident must be made to appear before he can recover.

Railroad.—*Negligence.—Failure to Give Signals.—Higher Rate of Speed than Allowed by Ordinance.— When Not Misleading Circumstances.*— The negligent acts of the servants of a railway company in failing to give the proper signals, and in running the train at a higher rate of speed than the city ordinance permits, can not in any way excuse a person| about to go upon the track from using the proper precautions to avoid injury; for such conduct could not be considered as misleading to a person, when he might easily have seen the approaching train if he had but looked in the direction whence it was coming.

From the Clarke Circuit Court.

*S. Stansifer,* for appellant.

*L. A. Douglass* and *W. D. Marshall,* for appellee.

Lotz, J.—The appellee was the plaintiff below. She brought this action to recover damages for the death of her decedent, alleged to have been caused by the negligence of the appellant.

A demurrer was sustained to the first paragraph of her complaint.

The second paragraph charged in brief, that on the

12th day of April, 1891, the evening passenger train from Indianapolis, belonging to the defendant, was being carelessly and negligently run over its track in the city of Jeffersonville, at a place where Ninth street crosses Wall street, at a high rate of speed, to wit, forty miles per hour, and in violation of an ordinance of said city of Jeffersonville, which ordinance forbade the running of trains on said street at a greater rate of speed than four miles per hour; that while the decedent was passing on foot along and over said track and crossing, he was struck by said passenger train and killed, without any fault or negligence on his part, and solely on account of the negligence of the defendant; that the place where the decedent was passing along and over defendant's track when killed was a public street and crossing, and was traveled by a large number of persons at all times of the day and evening, which fact was well known to the defendant; that the decedent, while passing along and over said track, as aforesaid, looked and listened in the usual manner, and saw said train advancing close upon him at the very unusual and high rate of speed aforesaid, and being thus suddenly and unexpectedly confronted with imminent danger and peril was overcome, and, losing his presence of mind, was unable to escape in time to save his life; that if said train had been going at the usual and lawful rate of speed, decedent would not have been overcome with fright and would have seen said train in time to have avoided being struck; that said decedent left surviving him the plaintiff, his widow, and five children; that plaintiff has been duly appointed administratrix of his estate.

The third paragraph differs from the second, in that it avers that the usual rate of speed at which trains are run along said street is much less than forty miles per hour; that defendant had no watchman or flagman at

said crossing, and failed and neglected to ring the bell or·sound the whistle, or give any other signals of warning, when approaching said crossing; that the decedent looked and listened in the usual manner in time to have escaped from danger from a train moving along said track in the usual way and at the usual rate of speed. The allegation that "if said train had been going at the usual and lawful rate of speed decedent would not have been overcome with fright, and would have seen the train in time to have avoided being struck," is omitted. Otherwise the two paragraphs are alike.

A demurrer was overruled to each of these paragraphs. There was an answer in denial filed, a trial by jury, and verdict in favor of appellee in the sum of $1,000. A motion for a new trial was overruled, and judgment on the verdict followed.

The errors assigned are the overruling of the demurrers to the second and third paragraphs of complaint, and the overruling of the motion for a new trial. Each paragraph contains the general averment that the deceased "was struck and killed without any fault or negligence on his part, and solely on account of the negligence of the defendant."

· It has often been decided that the averment that the plaintiff was without fault is of a technical character; and, as a matter of pleading, it makes the complaint good in that respect against all mere inferences of contributory negligence, unless the inference arises as a necessary legal conclusion from the facts stated. We do not lose sight of the rule that ordinarily the specific facts will control the general averment if they make it clear that there was contributory negligence. But so long as the specific facts do not force the legal conclusion that there was contributory fault, the averment that there was no such fault entitles the plaintiff to have it submitted to

the jury as a question of fact whether or not there was such negligence. *Town of Salem* v. *Goller*, 76 Ind. 291; *Pittsburgh, etc., R. W. Co.* v. *Wright*, 80 Ind. 182; *Evansville, etc., R. R. Co.* v. *Crist*, 116 Ind. 446; *Ohio, etc., R. W. Co.* v. *Walker*, 113 Ind. 196, and cases there collected.

We are of the opinion that there are no special facts averred in either paragraph from which an inference of contributory negligence arises as a matter of law.

Each paragraph was sufficient to withstand the demurrer. It is contended that the evidence wholly fails to sustain the verdict, and that it was the duty of the court to have given appellant's peremptory instruction directing a verdict in its favor.

The evidence shows that Eighth street, Ninth street, Tenth street, and Eleventh street, are streets of the city of Jeffersonville, whose general course extends from the northeast to the southwest in the order named, beginning at the south; that Walnut street, Locust street, Wall street, Spring street and Ohio street are platted streets of said city, whose general course extends from the northwest to the southeast and in the order named, beginning on the east.

All of said streets were platted and dedicated to the public use in the year of 1839, and have ever since continued to be public streets of said city; that all of said streets intersect and cross each other in the order named, except Ohio street, which extends only so far north as Spring street. Appellant's railroad track enters said city from the north and curves southwesterly by a point known as North Tower, crosses Locust street north of Ninth, and enters upon Ninth street between Locust and Wall, and continues thence westward near the center of said Ninth street until after it crosses Spring and Ohio streets. Immediately west of Spring and Ohio streets are

situated the appellant's passenger station and platforms. From Spring street eastwardly to and beyond Wall street, the railroad track is on an embankment some six or seven feet above the natural surface of the ground. This embankment was constructed by the railroad company. On the embankment south of the track, there is a beaten, footway about five feet wide, beyond the ends of the cross ties, and on the north side another footway not quite so wide. At the Wall street crossing, the south side footway is slightly sunken, caused by the use and wearing away of two paths up the slope of the embankment, which paths turn, one to the east and one to the west. The embankment on Ninth street had long been much used by the public as a footway, both on the sides and on the track, and was the most convenient and desirable way for the public in passing from the east to the west, and *vice versa*, at this point in the city. There are ditches on both sides of the embankment, and vehicles can not cross, and foot passengers are compelled to climb the embankment in crossing said street. Ninth street has never been improved and graded by the city. The common council of said city granted to the railroad company the right of way for the purpose of locating its track and operating its trains thereon; the ordinance conferring such rights, limited the speed of trains to four miles per hour, forbidding the blowing of the whistle but requiring the bell of the engine to be rung while the same should be in motion or about to start. The ordinance also required the railroad to be constructed on the grade of the street, when such grade should thereafter be established by the city. The view from Spring street to North Tower was unobstructed. The distance from Spring to Wall street is 426 feet; from Wall street to where the railroad leaves Ninth street, 230 feet; from Wall street to North Tower, 930 feet, and from Spring

street to North Tower, 1,384 feet. The railroad track, as it approaches Ninth street from the east, is on a down grade of about five feet in one thousand. The schedule time of the train at North Tower was 7:19 P. M., and at the passenger station at 7:20 P. M. The train was running nearly on its schedule time, the evidence as to the usual rate of the train at this place varies from fifteen to forty miles per hour.

Benjamin Bennett, the deceased, was a carpenter and house painter by vocation. He had never worked on a railroad, and had no knowledge of the speed and movements of trains.

On the evening of April 12, 1891, shortly before the train arrived at the passenger station, he was at the platform of said station engaged in conversation with a friend. The train came round the curve with the headlight burning and the cars lighted. Just after the train passed Wall street the deceased was found dead, his forehead was crushed, his face cut, and his shoulder broken or dislocated. There were no marks of injury on his person below the shoulders. His body, when found, lay a few feet east of the center of Wall street on the south side, and nearly parallel with the track, the head to the east.

No witness testified to seeing the train strike the deceased. The only evidence for the appellee, touching the immediate preceding whereabouts of the deceased or of his condition or what he was doing, is that of one witness who saw him standing on the Spring-street-station platform. This witness left the deceased standing there and did not see him again. In the same respect, the only evidence for appellant was that of two witnesses. One saw an intoxicated man going toward the railroad on and near to Wall street; soon after this, witness saw a

man sitting in a stooping position on a cross tie and on the south side of the railroad. The other witness, walking east on the embankment, saw a man in the same position at the same place and about the same time.

Neither of these witnesses could identify the deceased as the man who was seen by him or her.

There was evidence that the deceased was not intoxicated on this evening.

The jury might well draw the inference that the man who was seen by these witnesses was not the deceased. There was evidence on the part of the appellee, tending to prove that the speed of a train can not be well determined in the dark, by looking at the headlight while on the track facing it.

Some of the witnesses did not hear the bell, others testified that it was ringing.

There was no direct evidence as to how the deceased reached the Wall street crossing, but the fair inference which the jury might draw is, that he walked on the embankment along and on Ninth street.

There is no direct evidence that the deceased stopped and looked and listened in the usual manner, or that he was suddenly overcome with fright so as to lose his presence of mind, except as may be inferred from the other circumstances.

There was no evidence that the deceased was familiar with the crossing or the rate of speed at which trains usually ran at this point. He lived in the city, on Mulberry street, two squares below Spring.

Appellant's counsel confidently contends that the evidence wholly fails to show that the deceased was free from fault. The embankment having been constructed by the railroad company in a public street for the use of its tracks, it is asserted that the deceased had no right to walk thereon; that he was a trespasser, or, at the most,

merely a licensee, and was there at his own peril.

In our judgment he was neither a trespasser nor a licensee. The street was dedicated to the public, to be used as a highway. The fact that the city authorities gave the railroad the right to construct its tracks and run its trains thereon did not oust the rights of the public. The people of the city had the same right to use it as they had before the railroad was constructed, with the bare exception that when trains were passing thereon they must yield to the superior rights of the company. And this is true, whether the street be improved or unimproved. *Louisville, etc., R. W. Co.* v. *Phillips,* 112 Ind. 59, and cases there collected; *Ohio, etc., R. W. Co.* v. *Walker, supra.*

The evidence here shows that the deceased was killed on the crossing. The cases cited by appellant have no application to the facts of this case.

As said by BRADLEY, J., in *Continental Imp. Co.* v. *Stead,* 95 U. S. 161: "The people have the same right to travel on the ordinary highways as the railway companies have to run trains on the railroads."

The public have the right to cross a railroad track at any point in a public highway, and are "not out of place in so doing." *Louisville, etc., R. W. Co.* v. *Head,* 80 Ind. 117.

The controlling question in this case is that of contributory negligence on the part of the deceased. Conceding that there was sufficient evidence to authorize the jury in finding that he was struck by the train, and that the appellant's servants in charge of the same were negligent in failing to ring the bell and in running the train above the ordinance rate of speed, there would still be no right of recovery if, by his own want of proper care, the deceased contributed proximately to the injury.

The circumstances surrounding the death of the de-

ceased are not proved.   No one saw him immediately before or at the time he was struck.   His body was found lying near the street crossing, the face and forehead cut and bruised, the left shoulder crushed, the neck broken. This might have occurred as a result of his attempting to pass over the track at the crossing near which he was found, or while he was walking on or near the roadbed toward the approaching train, or standing or sitting upon or near the track.   Just how he reached the point where he met death, so far as the evidence discloses, is a mystery unsolved, and incapable of being solved.   There was evidence from which it might have been found that he was sitting, stupefied by intoxication, on the end of a cross tie.   The jury might also have concluded from the evidence, that he was not intoxicated.   But whether he was drunk or sober, whether sitting or walking on or dangerously near the track, or in the act of crossing the same, due and proper care required that he should look and listen for an approaching train, and if one could be seen or heard approaching him, it became his imperative duty to leave the track, if upon it, or to refrain from going upon the same, if away from it.

Conceding that the jury might properly draw the inference that he was in the act of crossing, or was walking longitudinally upon the track in the direction of the approaching train, when he was struck, it still remains to be determined whether the circumstances in either case warrant the conclusion that he was in the exercise of proper care.

Assuming, in the first place, that the deceased was attempting to pass over the crossing at a place where he would ordinarily have a right to cross, it was still incumbent upon him to exercise his senses of sight and hearing, as well as his power of locomotion, to a reasonable extent, in order to avoid a collision.

The undisputed evidence shows that there was an unobstructed view of approaching trains from the crossing of fully 930 feet. If the deceased, therefore, attempted to cross the track at this point, and looked before going upon it, as it was his duty to do, he must have seen the approaching train at a distance of 930 feet from him, in which case no man, in the exercise of ordinary prudence, would undertake to cross. If the train was nearer than this when he first saw it, or might have seen it, had he looked, his negligence in then attempting to cross was still more flagrant.

To carry out the theory of the complaint, we should be forced to assume, if we grant that he could not have seen the headlight until he had gone upon the track for the purpose of crossing, that at sight of the light, when that far distant, and by reason of the rapid speed of the train, he suddenly became so bewildered and confused as to lose the power of making proper use of his faculties, whereby he was prevented from reaching a point of safety before he was run down by the train. It seems to us that such an assumption would not be warranted, as it would suppose a condition most unusual and out of the line of all ordinary experience.

If, however, the jury drew the inference that the deceased was walking upon the railroad track, or the beaten path by the side of the same, when the train approached him, the difficulty in finding that he was in the exercise of due care is equally as great, or greater.

Conceding that the track was located upon a public highway or street, and that in making use of the same the deceased was neither a trespasser nor a licensee, it will not be disputed that he was still required to make use of his senses of sight and hearing. If he walked upon or along side of the track from Spring street, the uncontradicted evidence is that he could have seen an approach-

ing train, if he had looked, for a distance of 1,384 feet, or more than a fourth of a mile. To continue upon the track, or so dangerously near the same, as to be within reach of the train, upon the assumption that it was not running above the ordinance speed of four miles per hour, and that he would have ample time to avoid the danger after the train had reached some point nearer to him than it was when he first saw it, or could have seen it, was a violation of all rules requiring due and proper care on the part of the deceased; for we are aware of no rule of law which permits a pedestrian to remain on a railway track after he has ample warning of the near approach of a train, and to do so is negligence which will debar him from recovering damages if injured.

We have thus far regarded the circumstances of the killing in the view most favorable to the deceased. But there was just as much reason for supposing that it occurred while the deceased was sitting down upon the end of a cross tie, or was standing upon or near the track when the engine struck him. The theory that he was intoxicated is not without support from the evidence.

Did the jury, without any direct evidence whatever of the manner in which the accident actually occurred, have the right to infer that it took place without negligence on his part, when the circumstances point just as clearly to a condition of things that presupposes such negligence? We think not. That the deceased might have come to his death when, upon some supposable theory not inconsistent with the surrounding circumstances, he may have been free from fault, is not sufficient. The fact that the circumstances point just as clearly to his negligence as to his freedom from the same, is sufficient to preclude a recovery. *Indiana, etc., R. W. Co.* v. *Greene, Admx.*, 106 Ind. 279; *Toledo, etc., R. W. Co.* v. *Brannagan, Admx.*, 75 Ind. 490.

The rule is too well settled by our own cases to admit of any invasion by us that the *onus* is always upon the plaintiff, not only to show the negligence of the defendant, but to establish, also, by some affirmative evidence, either direct or circumstantial, his own freedom from fault contributing to the injury. The law never presumes guilt or fault, and always casts upon the party asserting it the burden of proving the same. But while this is true, and while, therefore, the plaintiff can not recover unless he establishes the negligence of the defendant, it does not follow that the latter, in order to defeat a recovery, must show affirmatively that the plaintiff was himself at fault. The plaintiff is required to prove not only negligence, but unmixed negligence, on the part of the defendant, and in order to make out a case of unmixed negligence, as a subordinate proposition, and necessarily involved in the same, the plaintiff must make it appear, also, that he, or the one in whose stead he sues, was himself in the exercise of proper care. This is the Massachusetts rule, and it has always been followed by our own courts. Buswell Pers. Inj., section 135, and cases cited.

From the rule just stated, it follows as a necessary corollary that a presumption attaches in all such cases that the fault was *prima facie* that of the plaintiff, and hence, before there can be a recovery, this presumption must be overcome by some affirmative evidence tending to prove the exercise of due care by the plaintiff when he was injured by the negligent conduct of the defendant. *Toledo, etc., R. W. Co.* v. *Brannagan, Admx., supra; Indianapolis, etc., R. W. Co.* v. *Greene, Admx., supra; Indiana, etc., R.W. Co.* v. *Hammock*, 113 Ind. 1; *Cincinnati, etc., R. W. Co.* v. *Howard*, 124 Ind. 280; *Miller, Admr.*, v. *Louisville, etc., R.W. Co.*, 128 Ind. 97; *Cadwallader* v. *Louisville, etc., R. W. Co.*, 128 Ind. 518.

We do not deny the doctrine that the plaintiff's due care may sometimes be inferred from the negligent acts of the defendant, as laid down by some of the cases. *Pennsylvania Co.* v. *Stegemeier, Admx.*, 118 Ind. 305; *Cleveland, etc.*, *R. W. Co.* v. *Harrington*, 131 Ind. 426.

That doctrine, we think, however, is properly applicable only in cases where the defendant's conduct is such as is calculated to allure a person of ordinary prudence into the danger, or where the circumstances are such as to warrant a reasonably cautious person in acting upon the assumption and belief that the defendant is observing the legal requirements devolving upon him, and hence in not using that high degree of vigilance that might otherwise be required.

The case before us falls short of coming within the line of that class of cases. The fact that the train was running at a rate of speed greater than that permitted by the city ordinance, or that the statutory signals were omitted, can not be said to have misled the deceased, when he might easily have seen the train approaching, if he had but looked in the direction whence it came.

As said in Beach on Cont. Neg., section 64, quoted approvingly in *Indiana, etc., R. W. Co.* v. *Hammock, supra:* "No failure on the part of the railroad company to do its duty will excuse any one from using the senses of sight and hearing, upon approaching a railway crossing, and, whenever the due use of either sense would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence, without any reference to the railroad's failure to perform its duty."

This rule has been approved repeatedly by our Supreme Court.

Thus it was said, in *Louisville, etc., R. W. Co.* v. *Stommel*, 126 Ind. 35: "We are at a loss to understand what difference it could make as to the caution to be used by the

appellee's servant whether there was or was not a statute requiring the giving of signals. It was his duty to stop and look for an approaching train, if there was any point within a reasonable distance from the crossing from which he could observe a train approaching; and if no train was to be seen it was his duty when nearing the crossing to stop and listen for the sound which ordinarily follows a moving train; and a statute requiring signals to be given, though violated, does not excuse this vigilance."

In the case from which we have just quoted, the trial court had instructed the jury that the appellee's servant had a right to regulate his action upon the assumption that the company's employes would give the statutory signals, and if they failed in this, such failure was an element to be considered in determining whether the appellee's servant was guilty of contributory negligence. It was held that this was error, and that an instruction asked should have been given, that the failure of the employes in charge of the train to give the statutory signals did not enter into the question of contributory negligence, under the circumstances of the case. See, also, *Cincinnati, etc., R. W. Co.* v. *Howard, supra; Indiana, etc., R. W. Co.* v. *Greene, Admx., supra; Cadwallader* v. *Louisville, etc., R. W. Co., supra.*

We can not see how it could justly be claimed that the negligent acts of the appellant's servants, both in failing to give the signals and in running the train at a higher rate of speed than the city ordinance permitted, could in any way excuse the decedent from using the proper precaution to avoid danger. There certainly was nothing done by the servants of the appellant to induce an ordinarily prudent person to enter upon the track when he saw, or might have seen, the train approaching. The evidence conclusively shows that the deceased could have avoided the danger of a collision, had he left the track

(assuming that he was upon it) as soon as he could have seen the headlight of the locomotive; or had he remained off the track (if he was off) when he could first have seen such light. This being so, the fact that he remained upon the track or entered upon it after he might, by reasonable diligence, have observed the train approaching, would make him guilty of contributory negligence. *Miller, Admr.*, v. *Louisville, etc., R. W. Co.,* *supra.*

The duty enjoined upon a pedestrian in this connection is not less than that devolving upon one riding a horse or driving in a vehicle.

"Where a person thus approaching a railroad crossing could have seen the train by looking, before he attempts to cross, and a collision occurs, it will be presumed that he did not look, and by the neglect of so plain a duty he is guilty of such negligence as precludes him from recovering." *Mann* v. *Belt R. R., etc., Co.,* 128 Ind. 138.

We can not concede the correctness of the doctrine that the presumption that men will avoid danger rather than to court or defy it will be sufficient to overcome the necessity for some evidence of the absence of contributory fault. Such a doctrine is, in our judgment, in direct conflict with the decided cases in our own courts.

Thus, it was said in *Toledo, etc., R. W. Co.* v. *Brannagan, Admx., supra:* "The mere fact that he" (the deceased) "fell into the culvert, would not, itself, supply evidence that he was at the time he fell exercising reasonable care. There is no presumption that one who claims damages for injuries caused by the negligence of another was himself free from fault."

In the same case ELLIOTT, J., who delivered the opinion of the court, quotes approvingly from a New York case the following language: "It is the duty of the plaintiff to prove, and the right of the defendant, who is

charged with negligence causing an injury, that he should prove, by satisfactory evidence, that he did not contribute to the injury by any negligence on his part. This proof, in some form, constitutes a part of the plaintiff's case." *Warner* v. *New York, etc., R. R. Co.*, 44 N. Y. 465.

To which the learned judge adds: "It can not be presumed that the plaintiff is free from fault."

In *Indiana, etc., R. W. Co.* v. *Greene, Admx., supra*, MITCHELL, J., speaking for the court, says: "It was absolutely essential that there should have been some evidence exhibiting the conduct of the deceased in approaching the crossing. In order to uphold the verdict, it must have affirmatively appeared, either directly or circumstantially, that he was free from contributory fault. Did he look or listen for the train, or did he continue on in a 'jog trot' without thought of impending danger until horrified by the sight of the train, which was inevitably rushing upon him? Upon the plaintiff's case, these questions are left to be determined by conjecture. It is said, because nothing appears to the contrary, we are bound to presume that the deceased was in the exercise of proper care. This would be to supply by presumption that which an unbending rule of law requires should be established by proof."

And in another place in the same opinion the same learned judge says: "Many more authorities might be cited in support of the rule under consideration, but it can not be necessary. It is settled. The facts and circumstances, illustrating the conduct of the injured person at the time of the accident, must be made to appear."

It seems to us that this case is decisive of the question under discussion.

In *Cincinnati, etc., R. W. Co.* v. *Howard, supra*, BERKSHIRE, J., after reviewing the authorities upon the sub-

ject, reaches the same conclusion and adds: "As to the circumstances which found the appellant and her father on the crossing when the misfortune overtook them, the evidence is an entire blank. Whether or not they saw the train approaching, or heard the sound which a moving train gives out, and were deceived as to the distance it was from them and attempted to cross the track notwithstanding, we do not know. The rate of speed at which they approached the crossing, and whether or not they stopped and exercised their senses of hearing and sight, are facts which do not appear in evidence. In view of the authorities which we have cited * * * the case at bar seems to have been tried upon a theory entirely erroneous."

In *Miller, Admr.*, v. *Louisville, etc., R. W. Co., supra,* ELLIOTT, J., in delivering the opinion of the court, said: "The fact that there was no contributory negligence may undoubtedly be inferred from circumstances, but to authorize such an inference there must be evidence of circumstances from which the inference can be legitimately drawn."

Many more cases of our own might be cited, but it can not be necessary to do so. We are not unmindful of the fact that there are decisions in some jurisdictions outside of our own to the effect that the jury may consider as an item of evidence, the natural instincts and impulses of men to avoid an injury. Nor do we hold that there may not be instances, even under the rule prevailing in our own State, in which the jury would be authorized to presume that a person would naturally be inclined to avoid danger rather than to encounter it, provided there are facts or circumstances in evidence upon which the presumption could properly be based.

What we do believe and declare to be the result of our investigation is, that no inference of due care on the part

of the deceased can be drawn without some affirmative evidence, either direct or circumstantial, tending to show such case, and that the presumption referred to is not such evidence, and can not take the place thereof.

The Pennsylvania and California cases, relied upon as supporting the doctrine of the presumption that the deceased followed the ordinary instincts of men to preserve their lives, are decided upon the principle that the plaintiff's freedom from contributory fault is a matter of defense, and need not be shown by the plaintiff. These cases are, therefore, not authorities in support of, but are in direct conflict with, the Massachusetts rule. The latest expression of the Supreme Court of that State, in a case analogous to the one we are now considering, is to the effect that a presumption of due care on the part of the deceased will not be indulged, to supply the place of proof. *Moore* v. *Boston, etc., R. R. Co.*, 34 N. E. Rep. 366.

And in recent cases decided by the court of appeals of New York, the doctrine here contended for, that want of contributory negligence may be inferred from a presumption that a person exposed to danger will exercise care and prudence in regard to his own safety, has been expressly repudiated. *Wiwirowski* v. *Lake Shore, etc., R. W. Co.*, 124 N. Y. 420; *Riordan* v. *Ocean, etc., Co.*, 124 N. Y. 655.

In the case last cited a clear distinction is made between cases in which the jury are held to have the right to draw such an inference from the facts proved, and those in which it is asserted that they may make the inference without any proof upon the subject, and this distinction is applied to the case of *Galvin* v. *Mayor, etc.*, 112 N. Y. 223, cited in the case at bar, in support of the doctrine of presumption that the deceased was free from negligence.

110    APPELLATE COURT OF INDIANA,

The Pittsburgh, Cincinnati and St. Louis Ry. Co. v. Bennett, Admx.

Our conclusion is that the evidence discloses an utter absence of the want of contributory negligence, and that upon such evidence the appellant is entitled to a new trial.

The remainder of this opinion contains the individual views of the writer.

Appellant admits that the train was running in excess of the ordinance, but relies upon the rule that the negligence of one party is no excuse for negligence in another. *Evansville, etc., R. R. Co.* v. *Marohn*, 6 Ind. App. 646, 34 N. E. Rep. 27; *Indiana, etc., R. W. Co.* v. *Hammock, supra; Chicago, etc., R. W. Co.* v. *Hedges, Admx.*, 118 Ind. 5.

Appellant also invokes the rule that when a person, in crossing a railroad track, is injured by a collision with a train, the presumption arises that his own negligence contributed to the injury, or, in other words, that the fault was *prima facie* his own. *Evansville, etc., R. R. Co.* v. *Marohn, supra; Hathaway* v. *Toledo, etc., R. W. Co.*, 46 Ind. 25; *Indianapolis, etc., R. W. Co.* v. *Greene, Admx,*, 106 Ind. 279; *Indiana, etc., R. W. Co.* v. *Hammock, supra; Louisville, etc., R. W. Co.* v. *Stommel, supra; Cincinnati, etc., R. W. Co.* v. *Howard, supra.*

For the purpose of this case, it is unnecessary to determine the correctness of this last named rule; nor, perhaps, has this court any right to question it. At the most, it is but a bare presumption which yields to the slightest evidence. I deem it proper, however, to say that this rule seems harsh, and its correctness and justice may well be doubted. Presume means to take for granted, or to assume a fact beforehand and without evidence. A presumption of fact arises from the common experience of mankind. The absence of that degree of care which a reasonable and prudent person would exercise under given circumstances constitutes negligence.

It is the common observation and experience that in dealing with their own rights and with the rights of others, all reasonable persons are habitually careful. The negligent act is only one in many thousands. Hence we say negligence is never presumed, but must always be proved. It seems to me that the same rule should apply to contributory negligence. Whatever reason there may be for the rule above announced in certain cases, it is the common experience of all that men are generally extremely careful in matters where their personal safety is involved. Even more so than those who operate machinery that may produce the injury, because the personal safety of such persons is hardly ever in the same degree of jeopardy.

It is true that persons, in crossing the track, must be careful to ascertain whether a train is approaching.

"They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if collision happens; and hence it will not be presumed, without evidence, that they do not exercise proper care in a particular case." *Continental Imp. Co.* v. *Stead, supra.*

Again, whatever reason there may be for the presumption of contributory negligence at a crossing on a country highway, it seems to me that it fails under the facts of this case. Here we have a street in a city, much traveled by the public, and an ordinance which limits the speed of the train to the rate of four miles per hour. The danger to foot passengers, if the ordinance is obeyed, not being so great, the highest degree of care is not required of them. I think there should be a marked distinction between those injuries that occur at a country crossing and those that occur in cities and towns where the crossing is much used by the public and the rate of speed is regulated and limited by local laws. A proper regard for the rights of the public requires that the train

should not be operated at that high rate of speed that will endanger the lives of foot passengers.

It is true that the law requires the plaintiff to show that his own negligence did not contribute to the injury, before he is entitled to a recovery, but this rule is not based upon a presumption of contributory negligence. It is grounded upon considerations of public policy. The law only awards damages in cases of unmixed negligence. It refuses to apportion damages which arise from negligent conduct. If the negligent acts of two persons concur in bringing about an injury to one of them, it would be an extremely difficult matter to determine whether or not the injury would have occurred at all in the absence of one of the acts; and were this possible, a still greater difficulty would arise in apportioning the damages to each act. Hence, when both parties have been derelict, the law leaves them where it finds them, and refuses to award damages.

Ordinarily, he who has the affirmative of an issue is required to establish it. But it is the settled policy of the law in this State, and in some other jurisdictions, that in actions to recover for negligence, to require the plaintiff not only to aver, but also prove, that he was without fault.

In the federal courts, and in many of the State courts, and in the courts of England, this rule does not prevail. In such jurisdictions the burden of proof rests upon the defendant to show contributory negligence.

I do not agree with those authors and text-writers who assert that in actions for negligence the presumption is that the plaintiff was guilty of contributory negligence, and for that reason the burden is cast upon him to show that he was without fault. I think the reason for this rule, if it can be justified at all, rests on considerations of public policy.

The element which distinguishes actionable negligence from criminal wrong or willful tort, is inadvertence on the part of the person causing the injury. Strictly speaking, negligence denotes an absence of intention or purpose. This being true, when an injury is wrought through inadvertence, to discourage litigation, public policy has placed the burden of proving a negative upon the plaintiff.

This brings us to the consideration of another rule invoked by the appellant, that is, that the want of contributory negligence must be affirmatively shown.

There was no direct evidence that the deceased stopped and looked and listened before entering upon the crossing, nor was there any direct evidence that he was suddenly and unexpectedly confronted with imminent peril and overcome with fright, lost his presence of mind, and was thus unable to escape.

Within the whole range of judicial inquiry, there are but few questions that are more peculiarly and exclusively within the province of the jury than those of negligence and the want of contributory negligence. True, there are cases where, when the facts are undisputed and only one inference can be legitimately drawn, in which the court may, as a matter of law, rule negligence or no negligence, or contributory fault or want of contributory fault. But such cases are rare and exceptional. If the facts are in dispute, it is the province of the jury to determine them. But it frequently occurs that the facts are undisputed or conceded, and still the question of negligence or want of contributory negligence is one for the jury. If, from such facts, two inferences legitimately arise, the law recognizes the superior ability of the jury to determine which inference shall prevail.

The jurors are taken from the body of the community.

They are generally of varied vocations and experiences. In their callings and experiences, they have come in contact with and observed the conduct of men under varied conditions. It is this diversity that gives value to their unanimous judgment. Their average judgment may be said to represent the judgment of the average man. Collectively, they are much more capable of determining how an ordinarily prudent man would act under given conditions than judges of courts whose experiences are usually limited to one calling, and who are habitually disposed to generalize and follow precedent.

"This average judgment thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus accruing than can a single judge." *Railroad Co.* v. *Stout,* 17 Wall. 657.

I have adverted to these principles for the purpose of calling attention to the difficulties that beset a court, and especially an appellate court, when it is asked to disturb the verdict of a jury on a question of negligence or the want of contributory negligence. The trial court is clothed with supervisory powers over questions of fact arising on the trial. It may weigh the evidence as well as the jury, and if, in its judgment, the jury has made a mistake, it may grant a new trial. An appellate court will not weigh the evidence when it is conflicting. But neither the trial court nor an appellate court has any right to disturb the verdict of the jury, when, from the undisputed facts, or from the probable proven facts, two inferences may be legitimately drawn. To do so would be to substitute the judgment of the court for that of the jury and subvert the whole theory of the law bearing on this subject.

The appellant was running its train in excess of the

ordinance rate.   This is conceded.   This was negligence *per se,* if, by reason thereof, an injury followed.   *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31; *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer,* 99 Ind. 486; *Pittsburgh, etc., R. W. Co.* v. *Martin,* 82 Ind. 476.

Was the deceased at fault when he met his death? Contributory negligence is nearly always a question of fact, and should be left to the jury, unless it so clearly appears from the circumstances or uncontradicted evidence, as to leave no inference or fact in doubt.   It is only in very exceptional cases that it can be adjudged as a necessary legal conclusion from the facts found.   It is the duty of the court to instruct the jury what facts within the issues may or may not, under the circumstances, constitute contributory negligence, leaving to the jury the duty of determining whether or not the facts have been proved, and the inferences to be drawn therefrom.   *Levey* v. *Bigelow,* 6 Ind. App. 677, 34 N. E. Rep. 128, and cases there collected; *Thurber* v. *Harlem Bridge, etc., R. R. Co.,* 60 N. Y. 326; *Massoth, Admx.,* v. *Del. & Hud. Canal Co.,* 64 N. Y.524.

It is the settled law of this State that the want of contributory negligence must be shown by affirmative evidence.   The case of *Indianapolis, etc., R. W. Co.* v. *Greene, Admx., supra,* is a leading case bearing upon this subject.

Many other cases might be cited to the same effect. But whilst this is true, it is equally well settled that no particular kind or species of evidence is required to establish the absence of contributory negligence.   *Winslow* v. *Boston, etc., R. R. Co.,* 11 State Rep. (N. Y.) 831.

The question here is, whether or not there is any evidence of any kind from which the want of contributory

negligence may be inferred? It is not shown that the deceased had any knowledge of the usual rate of speed at the point where he was killed. The ordinance rate was four miles per hour. The ordinance was a local law of the municipality, and was binding upon all persons within its jurisdiction. *Citizens' Gas, etc., Co.* v. *Town of Elwood*, 114 Ind. 332.

And the jury might well infer from the circumstances, that the deceased knew the rate fixed by it, and that he acted upon such knowledge. The jury might well conclude, from the evidence, that the bell was not sounded. Can the fact that the train was running at a high rate of speed at a point where the ordinance limited it to four miles per hour, be considered as a circumstance or item of evidence from which the jury might infer want of contributory negligence? If so, then there is affirmative evidence, and this case does not fall within the rule laid down in the cases from which we have quoted.

In the case of *Madison, etc., R. R. Co.* v. *Taffe*, 37 Ind, 361 (376), it was said: "The rate of speed within the city being prescribed by a public law, the plaintiff, in determining whether it was safe and prudent for him to attempt to cross the railroad track, had the right to assume that the defendant would comply with such ordinance. It might have been safe for the plaintiff to have attempted to cross the track of the defendant's road if the cars only ran at the rate of four miles an hour, while it would have been unsafe and reckless to have made such attempt if the cars were being run at a much greater rate of speed."

In *Simons* v. *Gaynor*, 89 Ind. 165, this language was used: "Ordinances of a municipal corporation may be taken into consideration in determining whether the speed of the horse at the time of a collision, was excessive. One who rides or drives at a rate of speed greater than that prescribed by a statute or a municipal ordi-

nance must expect that fact to be used as evidence against him.''

In *Pennsylvania Co.* v. *Stegemeier, supra,* while the facts were widely different from the case in hearing, yet, on the question of the failure to obey the ordinance, the court said: ''*The effect of the appellant's failure to obey the local law extends much farther than the question whether it was or was not guilty of actionable negligence, for it exerts an important influence upon the question whether the intestate was or was not guilty of contributory fault.* The evidence shows that he was, and long had been, a citizen of Fort Wayne; and it is also shows that he was acquainted with the Hanna street crossing. The reasonable inference, therefore, is that he knew that when trains were about to pass the crossing the gates were shut down, or warning given by the flagman. But more than this, he had a right, within reasonable limits, to act upon the presumption that the company had done its duty and obeyed the law. He had no right, however, to recklessly omit to use his senses of sight and hearing, and rely entirely upon this presumption; but he did have a right to presume that there were no approaching trains. But here there is no evidence that he did not use his senses, as a prudent man would have done under the circumstances in which he was placed; on the contrary, there is evidence from which it may be reasonably inferred that he was not guilty of contributory negligence. It is a familiar rule that a man brought into danger by the wrong of another is not bound, when confronted by sudden and unexpected peril, to act with coolness and deliberation. The law recognizes the influence which unexpected exposure to danger exerts upon ordinary men, and does not demand of them the prudence and care that men would exercise under other circumstances. * * * The case before us belongs to the class in

118    APPELLATE COURT OF INDIANA,

The Pittsburgh, Cincinnati and St. Louis Ry. Co. v. Bennett, Admx.

which railroad companies are held responsible because they put the traveler off his guard and lure him into danger.''

On the other hand, there are cases which hold that the negligent acts of the defendant can not be considered in establishing the want of contributory negligence on the part of the plaintiff.

In *Cincinnati R. W. Co.* v. *Howard, supra,* it 'was held that, under the facts of that case, the failure to sound the whistle or to ring the bell, as by the statute required, were not circumstances which might be considered by the jury in determining whether or not the plaintiff was free from fault. The facts of that case are very meagerly stated in the opinion. It appears that the plaintiff and her father were in a buggy drawn by one horse, and were in the act of passing over the railroad track when struck by one of the defendant's locomotives. This case was followed and approved in *Louisville, etc., R. W. Co.* v. *Stommel, supra.*

In the last named case, the facts upon which the decision rests are not stated in the opinion.

Whether or not the negligent acts of the defendant can be considered as tending to show the want of contributory fault on the part of the plaintiff must depend upon the particular circumstances of each case. If the defendant, by negligent conduct, misleads the plaintiff, and thereby creates a false impression of safety when danger actually exists, then I think the jury may consider such conduct along with the other circumstances in determining the want of contributory fault. If this principle be borne in mind, there is no conflict between the authorities above cited; and each case was, no doubt, correctly decided upon the facts before the court.

The rule that a person who is about to enter upon a railroad crossing must stop and look and listen for ap-

proaching trains, before attempting to cross, is not an inflexible rule. It does not have the force and rigidity of a statute. Its application must depend upon the particular circumstances of each case. There are many cases which hold that the person is not bound to observe this rule when the railroad company, by its acts, have misled such person and lured him into danger by creating a sense of security when danger exists. *Pennsylvania Co.* v. *Stegemeier, supra; Pennsylvania Co.* v. *Marion,* 104 Ind. 239; *Chicago, etc., R. R. Co.* v. *Boggs,* 101 Ind. 522; *City of Indianapolis* v. *Gaston,* 58 Ind. 224; Beach on Cont. Neg., section 190.

"The law will never hold it imprudent in any one to act upon the presumption that another, in his conduct, will act in accordance with the rights * * of both, even though such other has once conducted himself in a contrary manner. *Newson* v. *New York, etc., R. R. Co.,* 29 N. Y. 383 (390).

A defendant can not impute want of vigilance to one injured by his act, as negligence, if that very want of vigilance were the consequence of an omission of duty on the part of the defendant. *Pennsyluania R. R. Co.* v. *Ogier,* 35 Pa. St. 60.

These authorities, I think, establish the proposition that in a proper case the failure to obey the law on the part of the railroad company may be considered by the jury as a circumstance tending to show the want of contributory negligence on the part of the deceased. This case differs essentially in its facts from that of the *Indianapolis, etc., R. W. Co.* v. *Green, supra.* That was a crossing in the country, and this was a crossing in a populous city.

In the absence of direct evidence, the court or jury, in determining the want of contributory fault, may also take into consideration those natural instincts and im-

pulses which prompt all men to avoid injury and preserve their lives. This principle seems to have been entirely overlooked in many of the decisions in this State.

This rule has special application in that class of cases where (like the case in hearing) the evidence is silent as to the conduct of the deceased at the moment he met his death.

In *Allen* v. *Willard*, 57 Pa. St. 374, the deceased met his death by falling into an excavation dug by the defendants for a cellar, on the line of the street. The undisputed facts were that, about 6 o'clock in the morning the deceased was found dead in the excavation, lying on his belly, his face thrown back, his body lying southwestwardly; the body was then cold and stiff, the neck broken, and a contusion on the top of the head, but the skull not broken. When found, there were on his person two watches and business and photograph cards. He was a man in good health, of temperate and otherwise correct habits. No person saw the deceased fall. No witness testified as to his conduct at the moment he met his death.

The court, by AGNEW, J., said: "Now all these facts tend to prove that Willard lost his life by falling accidentally into this open and unprotected pit.    *    *    * Being a man of sober and correct habits, and of good health, it is improbable that he reeled into the cellar when intoxicated, or while laboring under sudden illness; and, bearing no marks of violence upon his person, and valuable property being found upon him, it is not likely he was the victim of violence or robbery. The natural instincts which lead men, in their sober sense to avoid injury and preserve life, is an element of evidence. In all questions touching the conduct of men, motives, feeling, and natural instincts, are allowed to

The Pittsburgh, Cincinnati and St. Louis Ry. Co. *v.* Bennett, Admx.

have their weight, and to constitute evidence for consideration of courts and juries. Adding these to the circumstances of this case, we can not say that the evidence was insufficient to go to the jury as proof of actual negligence on the part of the defendants. We discover nothing from which an inference could be justly drawn of concurring negligence on the part of the deceased. It was sufficient to justify a finding that Willard came to his death by an accidental fall into the cellar, and that this was owing to the unguarded condition of the cellar on that night.''

In *Gay* v. *Winter*, 34 Cal. 153, the facts were substantially as follows:  At the crossing of two streets in the city of San Francisco there was a hole two by five feet in dimension. It was the duty of the defendant to keep the street in a safe condition at this point.  John Gay, Jr., the deceased, at the time he met his death was about five years old. He was more than usually intelligent and considerate for one of his years. On the morning of November 17th he was sent by his mother to a meat market about one block distant from the residence of his parents, and within about thirty yards of the hole at the crossing, to do marketing. He went to said market, and as he returned he walked down the street in the direction of said crossing, near which he was last seen alive. He fell through said hole and was drowned in the waters of the bay. No witness testified as to seeing him at the moment he fell into the hole and met his death.

Upon these facts the court, by SANDERSON, J., said: ''How far the plaintiff was bound to go for the purpose of showing that the death of his intestate was not attributable to his own negligence, appears to be the principal question in the case.''

After adverting to the general rule with reference to

negligence and want of contributory negligence as announced by Lord Ellenborough in the celebrated case of *Butterfield* v. *Forrester*, 11 East, 60, the court continues: "In a majority of cases doubtless this general rule will meet all the exigencies, but there are cases, of which we think this is one where it does not seem to afford a satisfactory solution. Where the testimony is of such a character as to show affirmatively what was the conduct of both parties, it is undoubtedly adequate for all purposes; but take a case where the testimony as to the defendant's conduct does not also show what was the conduct of the plaintiff, must the plaintiff go farther and show that he exercised proper caution and prudence, or that no negligence on his part contributed in any degree to the injury? If under the circumstance of the case he is able to show what his conduct was, it would be no hardship to require him to prove himself blameless; but suppose he is unable, as in the present case, to show by direct testimony what his conduct was, is the jury, as a matter of law, bound to return a verdict for the defendant notwithstanding his fault is clearly established? Or, which amounts to the same thing, is the court, in such a case, bound to non-suit the plaintiff?"

In concluding the opinion it was said: "In the absence of any direct proof we are of the opinion that the jury are at liberty to infer ordinary care and diligence on the part of the plaintiff from all the circumstances in the case—his character and habits and the natural instincts of self-preservation. To hold otherwise would be in effect to presume negligence on the part of one in excuse of negligence on the part of another. If the plaintiff makes a case which does not charge him with negligence, we think his case should be allowed to go to the jury."

The court cites the following cases: *Johnson* v. *Hud-*

*son River R. R. Co.*, 5 Duer, 21, and same case, 20 N. Y. 65; *Beatty* v. *Gilmore*, 16 Pa. St. 463; *Button* v. *Hudson River R. R. Co.*, 18 N. Y. 248; *Clark* v. *Kirwan*, 4 E. D. Smith, 21.

I have quoted extensively from this case because it seems to be directly in point.

In *Johnson* v. *Hudson River R. R. Co.*, *supra*, this language is used: "The natural instinct of self-preservation would stand in the place of positive evidence, and the dangerous tendency of the defendant's conduct would create so strong a probability that the injury happened through his fault that no other evidence would be required."

Nor do I think the statement contained in the majority opinion, that "the Pennsylvania and California cases relied upon as supporting the doctrine of the presumption that the deceased followed the ordinary instincts of men to preserve their lives are decided upon the principle that the plaintiff's freedom from contributory fault is a matter of defense, and need not be shown by the plaintiff," is a correct interpretation of such cases.

In *Allen* v. *Willard*, *supra*, this language is used: "It can not be denied that actions for injuries arising from alleged negligence, not founded upon a contract * * * must be supported by affirmative proof of the fact of negligence."

The case of *Butterfield* v. *Forrester*, *supra*, is the foundation for the doctrine that the burden rests upon the plaintiff to show want of contributory negligence. See Beach Cont. Neg., section 418.

In *Gay* v. *Winter*, *supra*, the doctrine of *Butterfield* v. *Forrester* is expressly recognized.

I am not able to agree with my associates that there is no affirmative evidence from which the want of contributory negligence may be inferred. I think there are at

least two items, the running of the train in excess of the ordinance rate under the circumstances, and the natural instincts of self-preservation on the part of the deceased. They are proper circumstances upon which to predicate the want of contributory fault. Whether this court or the trial court would draw the inference of such want, is immaterial. When this court determines that there are some circumstances upon which such want may or may not be predicated, its duty is done.

Whether the deceased went upon the track or embankment at the crossing, or walked down it longitudinally from the passenger station, is not found by the evidence, but he was on the crossing lawfully. Of course, it was his duty to make use of his senses of sight and hearing, and use all proper means to protect himself from injury. There was evidence properly given to the jury which tended to show that a person on a track facing a headlight of the engine can not after dark determine the speed of the train. The deceased may have been walking along the embankment, relying on the ordinance rate of four miles per hour, and being unable to determine the rate of speed of the approaching train until it was near upon him, was thus lured to the point of danger, and, being suddenly and unexpectedly confronted with great peril and danger, lost his presence of mind and was unable to escape. At least such facts are legitimate inferences which might be drawn by the jury from the evidence. The jury had the right to presume, in the absence of any showing to the contrary, that the deceased endeavored to preserve his life and save himself from injury.

And the law commits the right of drawing the inference to the exclusive province of the jury. The authorities go even farther than mere presumption.

In *Cleveland, etc., R. R. Co.* v. *Rowan*, 66 Pa. St. 393,

this language is used: "As the love of life and the instincts of preservation are the highest motive for care in any reasoning being, they will stand for proof of care until the contrary appears."

We have here a case where a man was killed in the dark by a train of cars at a street crossing in a populous city. The train was running at a high rate of speed in violation of a city ordinance. It is certainly within the range of probability that the deceased might have met his death while he was exercising prudence and caution. Such instances are not infrequent. Shall it be said that, because no witness gave testimony of his conduct at the moment he met his death, no recovery can be maintained? It seems to the writer that to so hold would be to encourage the reckless and heedless operation of trains and further imperil the lives and property of the citizens of the State.

The language of the Supreme Court of the State of New York in the case of *Ernst, Exx.*, v. *Hudson River R. R. Co.*, 35 N. Y. 28, meets with my hearty approval: "In the present case, the defendants not only misled the testator by not exhibiting the flag at the crossing, in accordance with the uniform custom when an engine was near, but also by approaching the highway illegally, neither sounding the whistle nor ringing the bell as they advanced. This was an act in open defiance of a public statute, enacted for the protection of the traveler. It was a flagrant breach of duty to the passengers, whose safety it jeopardized, to the stockholders, whose property it imperiled, and to the testator, whose life it exposed. Its direct tendency was to put him off his guard, to disarm his vigilance, and to produce a false sense of security. To transfer the blame to him, would be to screen the wrongdoer at the expense of the victim. It is not the policy of the law to favor those who deliberately vio-

late its mandates, nor is it the duty of courts to invent excuses for wrongdoers, or to palliate the guilt of reckless homicide. Our statutes for the protection of life are to be obeyed; and when they are broken and defied, responsibility is not to be evaded by imputing blame, without proof, to him who suffers death, for the sake of shielding those who inflict it.''

The court instructed the jury as follows: "An inference of care on the part of the deceased arises from the known instincts of self-preservation in every man, and absence of fault on his part may be inferred from the general and known disposition of men to take care of themselves and to keep out of the way of difficulty and danger, and it is the duty of the jury in this case to take such inferences into consideration in arriving at the question of due care of the deceased at the time of the accident.''

This instruction, in the light of the authorities above cited, was not erroneous in my judgment.

Judgment reversed, at the costs of appellee, with instructions to sustain the motion for a new trial.

Filed Nov. 28, 1893; petition for a rehearing overruled Feb. 1, 1894.