Filed April 29, 1885.

————◆————

No. 11,826.

## The Chicago and Eastern Illinois Railroad Company v. Boggs.

RAILROADS.—*Negligence.*—*Injuries to Travellers at Public Crossings.*—*Statutory Signals.*—It is the duty of railroad companies to give the signals required by statute when approaching a public crossing, and a breach of this duty constitutes actionable negligence. The purpose of the statutory signals is not merely to give notice that a railroad track crosses the highway, but also to warn travellers on the highway of the approach of trains.

SAME.—*Running Trains so Close as to Make Signals Unavailing.*—Where one train is run so close behind another as to make the statutory signals unavailing as means of warning travellers, the railroad company is guilty of negligence.

SAME.—*Right to Instruct as Matter of Law that Disobedience of Statute Constitutes Negligence.*—The court has a right to instruct, as matter of law, that a failure to give the statutory signals at public crossings constitutes negligence.

PRACTICE.—*Instructions.*— *Repeating.*—Where the jury is once fully and clearly instructed upon a given point, the court is not bound to repeat the instructions in different language.

From the Vermillion Circuit Court.

*J. Henry, W. Armstrong, J. Jump* and *C. W. Ward*, for appellant.

*C. V. McAdams, J. G. Pearson, J. C. Sawyers* and *O. B. Gibson*, for appellee.

ELLIOTT, J.—On the morning of the 16th of July, 1883, the appellee and her husband were driving along a highway which the appellant's track crossed. As they neared the crossing, they heard a locomotive and train approaching, and they stopped until that train had passed. As soon as that train had cleared the highway, the appellee's husband started the horses into a brisk trot, and attempted to cross the track, but the wagon was struck by a train which was following the one that had gone over the crossing, and the appellee was thrown out and seriously injured. There is a sharp conflict in the evidence as to how closely the rear train was following the leading one, but there is evidence fully warranting the inference that there was only a very short distance between them, and that there was an interval of a very few seconds only between the time the one left the crossing and the time the other ran upon it. There was evidence tending very strongly to show that during the summer the growing grain, the rank weeds and luxuriant foliage of trees and bushes obstructed the view of the crossing from the highway. The track runs through a deep cut and makes a curve before reaching the crossing, and these, combined with other things, made it very difficult to see an approaching train. The appellee and her husband were old persons, the former sixty-five years of age and deaf in one ear. They were both well ac-

quainted with the crossing, and had very frequently driven over it. The appellee testified that she and her husband did look and listen for approaching trains as soon as they reached a point where they could see, but that they neither saw nor heard the train which ran into the wagon until they had driven upon the track. The train which first passed the crossing was composed of seventy-three cars, and was about one-half mile in length. There was a direct conflict as to whether the whistle was blown or the bell sounded by the persons in charge of the engine which struck the appellee, and there was also much evidence tending to show that the clatter and noise of the first train was so great that it would have drowned the sound of the bell or whistle, even if the signals required by law had been given by the hindmost train.

The statute requiring signals to be given at a designated distance before reaching the highway crossing is intended to compel railroad companies to sound warnings of the approach of trains, and is not intended, as appellant assumes, merely to warn travellers that a railroad track crosses the highway. The duty is imposed by law, and its breach constitutes negligence. It is a familiar principle that a breach of duty constitutes actionable negligence, and it is upon this principle that the adjudged cases, without conflict, declare that the omission to give the signals required by statute constitutes such negligence as renders the company liable to one who, without fault on his part, has suffered injury as the result of that negligence. It is hardly necessary to quote from the authorities upon this subject, yet, for the purpose of setting the question in full view and throwing upon it a clear light, we do quote from some of the text-books. In a recent work it is said: "When by law bell ringing and sounding the whistle are required in approaching and passing over public road crossings, the omission thereof amounts to actual negligence on the part of the company." 2 Rorer R. R. 1006. Another author says: "The company is liable for injuries caused by its omission of these duties, when imposed by stat-

ute.   The omission is calculated to mislead the traveller, and to assure him that the coming of the train is not imminent; and it is evidence of negligence." Pierce R. R. 350.   In speaking of duties imposed by statutes upon railroad companies, it was said in another text-book, that " These regulations being clearly intended for the protection of travellers, it would seem natural to suppose that any violation of them should be deemed culpable negligence, in an action brought by a traveller." Shearman & Redfield Neg., section 484. Wharton says:  " Even where a statute is in force requiring the use of a bell or steam-whistle or other signal at a crossing, while the omission to comply may, under the statute, create a *prima facie* case against the company, it is a good defence that the plaintiff saw the train, and recklessly exposed himself to the collision.   When, however, the injury results from the omission of the signal, then the railroad is liable." Wharton Neg., section 804.   In the case of *Pittsburgh, etc., R. W. Co.* v. *Martin,* 82 Ind. 476, it was said, in speaking of our statute:  " While such a law existed, a violation of it was undoubtedly a failure to give reasonable, proper and timely notice.   The signal required by the law not being given, the view being obstructed, and the plaintiff not being hard of hearing, he had no reason to suppose that the train was within eighty rods of the crossing; he was misled by the defendant's negligence in omitting the proper signal; he was not guilty of negligence in assuming, in the absence of any indication to the contrary, that the company was obeying the law, and that no engine was advancing toward the crossing within a distance of eighty rods." In the recent case of *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer,* 99 Ind. 486, the general subject was discussed, and it was held that the omission to give the signals required by statute constituted negligence, and that the statute gave a right of action to one injured in person or property by such negligence.

It may be laid down as settled law, that the omission to give the signals required by statute constitutes culpable neg-

ligence, and that such signals are intended to warn travellers,. in lawful use of the highway, of approaching trains. As this. is settled law, positively declared by statute, the railroad company can not disobey it without incurring liability to a traveller who is injured without fault on his part contributing to the injury. Nor can the company by its own wrong render unavailing the signals required by law. If it runs one train so close upon another that there is no time to give the warning in the manner prescribed by law, it is guilty of negligence. It is obvious that the object of the statute would be defeated if one train could be run so close to another as that the noise and rumble of the leading train would drown the signals given by the train following it. Railroad companies have no greater rights to the crossing than the traveller, except the right to priority in passing, and they have no right to do any act that will mislead a traveller and expose him to needless danger.

In *Beisiegel* v. *New York Central R. R. Co.*, 34 N. Y. 622, 633, it was said : "The omission of the customary signals was an assurance by the company to the plaintiff that no engine was approaching within a quarter of a mile on either side of the crossing. On this he was entitled to rely, and to the defendant he owed no duty of further inquiry." In the course of the opinion in *Owen* v. *Hudson River R. R. Co.*, 35 N. Y. 516, it. was said : "As a general proposition, the public has a right to rely upon the performance of its duty by a railroad company, and no one can be justly charged with negligence as against a wrongdoer, either violating or omitting its duty for such reliance." Another court says: "The citizen who, on a public highway, approaches a railway track, and can neither see nor hear any indication of a moving train, is not chargeable with negligence for assuming that there is no car sufficiently near to make the crossing dangerous." *Kennayde* v. *Pacific R. R. Co.*, 45 Mo. 255. It was said in *Pennsylvania R. R. Co.* v. *Ogier,* 35 Pa. St. 60, 72, in speaking of the omission to give the signals required by law : " For, if by negligence or omission of those

in charge of the train his vigilance was allayed, they are not at liberty to impute the consequence of their acts to his want of vigilance, a quality of which they deprived him." Even where there is no statute requiring signals to be given, or flagmen stationed at crossings, yet, if it has been customary to give signals or provide flagmen, it may be negligence to discontinue them. *Pittsburgh, etc., R. W. Co.* v. *Yundt,* 78 Ind. 373 (41 Am. R. 580). It is, indeed, a general rule that citizens have a right, within reasonable limits, to act upon the presumption that a corporation charged with a duty will perform it. *City of Indianapolis* v. *Gaston,* 58 Ind. 224; *Davenport* v. *Ruckman,* 37 N. Y. 568.

We need not, and do not, go to the extent that some of the courts have gone upon this general subject, and our purpose in referring to these cases is to make plain the great importance which the courts have everywhere attached to the duty to give notice of the approach of a moving train by the signals prescribed by law. If, as all agree, this duty is of such grave importance, and is of such great benefit to the traveller, then it must follow that the railroad company can not deprive the traveller of the benefit which the statute secures to him by negligently running trains so near together as to make the signals of the rear train useless and ineffective.

There are many cases holding that if a railroad company creates an appearance of safety, and a traveller, influenced by the appearance, enters upon the track and is injured, he may maintain an action for the injuries resulting from the negligence. *French* v. *Taunton Branch R. R.,* 116 Mass. 537; *Bonnell* v. *Delaware, etc., R. R. Co.,* 39 N. J. L. 189; *Ernst* v. *Hudson River R. R. Co.,* 39 N. Y. 61; *Sweeny* v. *Old Colony, etc., R. R. Co.,* 10 Allen, 368.

This principle applies here, and is, indeed, essentially the same as that declared in the cases we have referred to. It certainly is negligence to create an appearance of safety where there is, in fact, danger, and such a false appearance is created when one train follows another so closely as not to allow time

for giving the signals prescribed by statute. We have seen that the traveller has a right to presume that the law will be obeyed, and acting upon this presumption he has a right to assume that the company will not move one train so close upon another as to render of no avail the provisions of the statute. If the traveller can, by the exercise of ordinary prudence, discover and avoid the danger, he must, of course, do so, but this by no means proves that the wrongful act of the railroad company does not constitute negligence.

A railroad company does not always exonerate itself from liability by obeying the requirements of the statute. Mere obedience to the statute, when obedience would serve no useful purpose, is not enough. Obedience, when obedience brings no protection to the traveller, is unavailing. In a leading case upon this subject it was said: "The statute makes certain positive regulations, and the defendants, at their peril, are bound to comply with them; but there are no negative words, and there is no implication that a compliance was to absolve them from any duty which they were under before; and, therefore, if other precautions were necessary, the defendants were still bound to take them." *Bradley* v. *Boston, etc., R. R.*, 2 Cush. 539. A text-writer says: "The duties imposed by statute in such cases, in regard to bell ringing and whistling, and putting up signs, are in their nature cumulative, and are not intended as a substitute for such other means of observing ordinary care as a reasonable regard for the safety of others may require." 2 Rorer R. R. 1014. Thompson says: "Mere employment of statutory signs and signals will not exonerate the company when their servants are otherwise negligent." 1 Thompson Neg. 421. By another writer the rule is thus stated: "Statute provisions requiring signals to be given are cumulative only, and the company is still bound to use such other precautions as are required in the prudent and skilful management of its road." Pierce R. R. 349. Judge Redfield says: "In a case where the plaintiff was injured at a railway crossing by collision with

an engine, it was held that where the statute required, at such points, certain specified signals, the compliance with the requirements of the statute will not excuse the company from the use of care and prudence in other respects." 1 Redfield R. W. 566. To much the same effect is the language of Wharton. Wharton Neg., section 805.

If it be true, as it unquestionably is, that a compliance with the requirements of the statute will not always exonerate the railroad company, it must be true that a railroad company is guilty of negligence, if, by its own acts, it makes the statutory signals unavailing. It can not be legally possible that a railroad company may so run two trains as to make the statutory signals ineffective for the purpose for which they were intended, and yet exculpate itself by evidence that it complied with the letter of the statute. It would completely frustrate the purpose of the law to permit a railroad company to make the statutory signals ineffective by so running its trains as to make the signals of no avail as warnings to approaching travellers. It is, as we have seen, negligence to omit a duty, or perform an act constituting a legal breach of duty, and it conclusively follows that it is negligence to do an act that makes the performance of duty entirely ineffectual. Travellers, who are themselves exercising due diligence, are entitled to have the law obeyed in such a manner as that it shall substantially accomplish the purpose its framers meant it to accomplish.

There are very many cases where the court may properly charge the jury that certain acts constitute negligence. We quote from a recent case this statement of the law: " But, as was said in McCully v. Clarke, 40 Pa. St. 399, there are some cases in which a court can determine that omissions constitute negligence. They are those in which the precise measure of duty is determinate, the same under all circumstances. When the duty is defined, a failure to perform it is, of course, neg-

ligence, and may be so declared by the court." *Schum* v.
*Pennsylvania R. R. Co.*, 19 Reporter, 184.

There are a great number of cases affirming that the court
may, in a proper case, assume the facts hypothetically, and
instruct the jury that they do, or do not, constitute negli-
gence, and this, Judge Cooley says, is always the proper course·
where the act involves a violation of a statutory rule or a
settled principle of law.    Cooley Torts, 670.    Our own cases·
have often declared and enforced this doctrine.    *Binford* v.
*Johnston*, 82 Ind. 426 (42 Am. R. 508), and authorities cited.
*Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186, and authori--
ties cited.    Perhaps the most familiar illustration is afforded
by those cases which hold that it is negligence as a matter of
law in a traveller to attempt to cross a railroad track without
looking and listening for approaching trains.    We think the
court did right in this case in instructing the jury, that if the·
view of the track from the highway was obstructed, so that
a train could not be seen, and the appellant ran a train so close
behind another as not to allow time for the statutory signals
to be given, the railroad company was guilty of negligence..
The duty to give the signals in the manner prescribed by stat--
ute was a determinate one, and so, also, was the duty to so·
conduct the running of trains as not to defeat the purpose of
the statute and render the signals useless.    The instructions·
upon this point properly left the questions of fact to the jury,
and pronounced the law upon the facts hypothetically assumed.

The court very clearly instructed the jury upon the ques-
tion of contributory negligence, and it was not bound to re-
peat the instruction in different language.    Where a jury is
once fully and clearly instructed upon a material point, it is
sufficient.    If it were otherwise, great confusion would re-
sult, and instructions would do quite as much harm as good.
*Union Mut. L. Ins. Co.* v. *Buchanan*, 100 Ind. 63.    The in--
structions given at the request of the appellant, upon the sub--
ject of the duty of a traveller approaching a railway crossing,,

were full and clear, and properly told the jury that the appellee was bound to exercise care and prudence, and that it was incumbent upon her and her husband to look and listen before driving upon the track. In one of the instructions the jury were told that if the appellee and her husband knew of the crossing, and had often passed over it, they were bound to use more care than if they had not previously known it; so that the appellant has no cause to complain of the refusal of an instruction embodying the same doctrine. The only doubt is whether the instruction given was not more favorable to the appellant than the law warrants, for it may well be questioned whether, in any case, there is a higher duty resting upon the traveller than that of looking and listening.

The rejection of evidence is not presented in such a form as to be available, because it does not appear that appellant properly stated what evidence its questions would elicit.

We can not disturb the verdict upon the evidence. Judgment affirmed.

Filed Feb. 18, 1885.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—In the brief on the petition for a rehearing counsel direct our attention to a prefatory part of the bill of exceptions, and insist that it shows what facts they offered to prove. We have again examined the record, but find no statement of any specific matters that the appellant expected to elicit from the witness. We do find the statement of the purpose for which the appellant asked to introduce the testimony; we find a recital that the court afterwards charged the jury, in accordance with appellant's theory; we find a skeleton of the questions asked, but we find no statement of the evidence which it was expected the questions would elicit. There is much in the bill as to the purpose of the appellant, but, unfortunately, not what is needed in the way of stating the specific facts that the witnesses would testify to. It is now too well settled to admit of debate, that the party must

state the evidence he expects to elicit, or else he can not have the ruling reviewed in this court.

Petition overruled.

Filed May 14, 1885.