[No. 5634.]

LIUTZ v. THE DENVER CITY TRAMWAY COMPANY.

1.   **Street Railways—Negligence—Care Required by Operators.**

It is the duty of persons operating a street car to exercise ordinary care and vigilance to avoid injuring pedestrians, but what constitutes such proper degree of care and vigilance must be ascertained from the circumstances of each case, for what would constitute ordinary care with respect to a particular case from its own facts would have to be determined by what a man of ordinary prudence would have done under similar circumstances.—P. 62.

2.   **Same—Injury to Pedestrians—Contributory Negligence.**

A pedestrian is required to exercise ordinary care to avoid being injured by an approaching street car, and whether that degree of care has been exercised must be determined by the attending circumstances of each case, for the question depends on what a reasonably prudent and cautious person would have done under similar circumstances; and, if a failure to exercise such degree of care is the proximate cause of an injury, there can be no recovery.—P. 63.

3.   **Same—Evidence—Sufficiency.**

Decedent signaled to the motorman of an approaching street car which could be boarded from either side, that she desired to board the car, and she then started across the street toward a point where the car was required by ordinance, and where it was customary, to stop for passengers; and when it was within

five or six feet of her, she stepped on the track in front of it, and was caught on the fender, thrown off and run over. Held, that decedent's negligence was the proximate cause of her injury.—P. 64.

4. **Same—Negligence of Company.**

A street car was something over half a block distant at the time it was signaled by decedent, and approaching on a slightly down grade at the rate of about eight miles an hour, with the gong sounding, when she stepped in front of it before it had reached its ordinary stopping point, and was fatally injured. Held, that defendant company was not negligent nor liable for failure to avoid the injury, notwithstanding decedent's negligence, although it might have been different had she not indicated her knowledge of the car's approach by signaling it.—P. 65.

5. **Street Railways—Relative Rights of Pedestrians and Company.**

Where decedent stepped in front of a street car while it was in motion and, after she had signaled it to stop, for the purpose of boarding it, but before it had reached its customary stopping point, the abstract question of the relative rights of pedestrians and street car companies to the use of the streets is not involved; for, both having rights upon such streets, both are bound to exercise reasonable care in enjoying them, the one to avoid being injured, the other to avoid inflicting injuries; and the rights of the parties must be determined from the record by ascertaining whether either violated the law in respect to such duties.—P. 66.

6. **Street Railways—Injury to Pedestrian—Failure to Exercise Care After Discovery of Peril—Question for Jury.**

Whether defendant was negligent in moving a street car for the purpose of extricating decedent after she was run over, is a question for the jury, where there is a conflict in the testimony and the question is one on which different intelligent persons might differ.—P. 69.

*Error to the District Court of the City and County of Denver.*

*Hon. P. L. Palmer, Judge.*

Action by John Liutz against The Denver City Tramway Company. From a judgment for defendant on a directed verdict, plaintiff brings error.

*Reversed and remanded.*

Mr. L. J. STARK, Mr. GEORGE S. REDD and Mr. GEORGE STIDGER, for plaintiff in error.

Mr. CHAS. J. HUGHES, Jr., Mr. GERALD HUGHES, and Mr. ALBERT SMITH, for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error brought an action to recover damages from the defendant in error for the death of his wife, which was caused by her being run over by a car operated by the defendant.

The complaint is in two counts. In the first count it is averred, in effect, that deceased, without fault upon her part, in attempting to cross Larimer street, in the city of Denver, was run over and injured so as to cause her death by a car operated by the defendant company, and that such injuries were occasioned through the negligence of the person operating the car. It is also alleged in this count that the car which ran over deceased was equipped with a rail-guard, or fender, to which was attached an appliance by which the motorman could have dropped it upon the track and thus have prevented the deceased from being run over, but that he did not do so; that at the time of the injury there was in force an ordinance of the city requiring the defendant to equip its cars with rail-guards, to be run as near the rails as practicable, and connected with an appliance by which the motorman could drop it, and that the motorman operating the car by which deceased was injured negligently and carelessly omitted to carry the rail-guard as near the rails as practicable, in that at the time deceased was injured it was carried at a height of from ten to fourteen inches above the rails.

By the second count, in addition to the matters alleged in the first, excepting the averments with re-

spect to the rail-guard, it is charged that after the car in question had run over the deceased, and while she was still upon the track and between the wheels, the persons in charge of the car so negligently moved it that she was fatally injured. The defendant answered, denying negligence upon its part, and pleading affirmatively that the deceased was guilty of contributory negligence, which was the proximate cause of her injury.

At the close of the testimony the court, on motion of defendant, directed the jury to return a verdict in its favor. Plaintiff has brought the case here for review on error.

The action of the trial court was based upon the ground that the contributory negligence of deceased was the proximate cause of her injuries. To review this action necessitates a consideration of the evidence, and we shall first consider the testimony which relates to the cause of action set out in the first count of the complaint, omitting, for the present, any reference to that bearing on the manner the rail-guard was carried or operated. Deceased, a young woman between 22 and 23 years of age, and in possession of all her faculties, had started from the south side to cross Larimer street a little east of its intersection with Twenty-fifth street in a diagonal direction towards the latter street, with the evident intention of boarding a car of the defendant, which was then approaching from the east. She signaled the car as she left the curbing. She was carrying on her right arm an infant about four months old, and walked rapidly across the street in the direction we have indicated. At the time the car was signaled it was distant something over half a block, and approaching on a slightly down-grade, at the rate of about eight miles an hour, which it is not claimed was an excessive speed. This car was so arranged that pas-

sengers could board it from either side. Its usual place, and where the ordinances of the city required it, to stop and receive passengers was on the west side of the intersection of Twenty-fifth and Larimer streets. As the car approached the gong was sounded. Plaintiff appears to have paid no attention to its approach, but continued on her course with her right side partially towards the car, and when it was within five or six feet of her, stepped upon the track over which the car was moving, with the result that she was first caught on the fender, then thrown off, and run over. The car was stopped within about twenty-five feet after she stepped upon the track. The car collided with her a few feet east of the east line of Twenty-fifth street. It was in good order and the brakes were in good working condition. One of the witnesses, who gave a very clear statement of the occurrence, in testifying with respect to the deceased stepping upon the track, stated (quoting from her testimony):

"She stepped almost immediately in front of the car, and she got just one foot in front of the car before the fender struck her. It was almost instantaneous, the fender striking her; as soon as she stepped on the track, almost instantly the fender struck her. Just as that occurred the motorman was winding the brakes and ringing the bell. I think about the time she stepped in front of the car he commenced to take up the brake. He was taking the brake up before, but he stopped the car more sudden, and did not ring the bell any more."

It is the duty of persons operating a street car to exercise ordinary care and vigilance to avoid injuring pedestrians. What constitutes a proper degree of care and vigilance upon their part must be ascertained from the circumstances of each case, because what would constitute ordinary care with re-

spect to a particular case from its own facts would have to be determined by what a man of ordinary prudence would have done under similar circumstances.—*Philbin v. Denver City Tramway Co.*, 36 Colo. 331; *Driscoll v. Market St. Cable R. Co.*, 97 Cal. 553.

It is also the duty of a pedestrian to exercise ordinary care to avoid being injured by an approaching car, and whether or not this degree of care has been exercised must be determined by the attendant circumstances of each case in which this question arises, for, likewise, it must also be determined by what a reasonably prudent and cautious person would have done under similar circumstances.—See authorities above cited, and *Kernan v. Market St. Ry. Co.*, 137 Cal. 326; *W. Chicago St. R. R. Co. v. Nilson*, 70 Ill. App. 171; *Connelly v. Trenton Pass Ry. Co.*, 29 Atl. 438.

If he fails to exercise this degree of care, and such failure is the proximate cause of his injury, he cannot recover. Tested by these rules, it is clear that the defendant was not guilty of negligence, and that the contributory negligence of the deceased was the proximate cause of her injuries. The evidence bearing on these questions is not conflicting, and is of such a character that but one inference can fairly be drawn therefrom. This is the test to apply in determining whether the questions of negligence and contributory negligence are to be determined by the court, or should be submitted to a jury. The deceased had signaled the car. It was not being run at an excessive rate of speed. The gong was being sounded. It could be entered on the side from which the deceased approached. Having signaled the car, the motorman was thereby informed that she knew it was approaching. She did not step upon the track until the car was within five or six feet of her. It

had not reached the point, by more than the width of Twenty-fifth street, where ordinarily it would stop in response to her signal, and in obedience to the ordinance of the city, to take her on board. In such circumstances we do not see how it is possible to reach any other conclusion than the one that the motorman, as a reasonably prudent person, was justified in assuming that she had no intention of attempting to cross the track in front of his car in such close proximity as to imperil her safety. As soon as she did he endeavored to stop it as quickly as possible. It, therefore, appears that he was not negligent. The deceased knew that the car was approaching, because she had signaled it to stop, with the evident intention of boarding it when it reached the intersection of Twenty-fifth and Larimer streets, where it stopped to take on passengers. She was walking rapidly and diagonally across Larimer street in that direction. She did not attempt to pass in front of the car beyond the point where, possibly, she might have been justified in assuming that, in response to her signal and the requirements of the ordinances of the city, it had stopped, or would halt, so that she could pass in safety. She appears to have been in possession of all her faculties. There was nothing occurred between the time she signaled the car and when she stepped upon the track to distract her attention. In addition to her actual knowledge that the car was approaching, the gong was being sounded; and yet, when the car was within but five or six feet of the point where she attempted to cross the track, she stepped in front of it and was injured. Certainly this was not the exercise of that reasonable degree of care that a person of ordinary prudence and caution would have exercised under the same circumstances; so that the testimony not only establishes that the defendant company was not negligent,

but that the failure of the deceased to exercise that degree of care which the law imposed upon her was the proximate cause of her injury.—*Griffith v. Denver Tramway Co.,* 14 Colo. App. 504.

Counsel for plaintiff contend that even though the deceased was negligent, the defendant company could have avoided injuring her after the motorman became aware of the fact that she was in peril. Our conclusion that the defendant company was not negligent practically disposes of this question. As we have already said, her actions did not indicate that it was her purpose to cross in front of the approaching car. She knew that it was approaching, because she had signaled it, and the gong was being sounded. Possibly, if she had not indicated to the motorman that she knew of the approach of the car the case might be different; but when she had conveyed to the motorman the information that she did know of its approach, then, although she was walking rapidly towards the track over which the car would pass, but where it was not customary to stop for passengers, there was nothing to indicate to the motorman that she was in a position of peril until she actually stepped upon the track, when, according to the testimony, it was too late to prevent the car striking her, although it appears from the evidence that he made every effort to do so.

Counsel cite many cases in support of their contention which we have so far considered, which it is not necessary to review at length. They are not applicable, because they are based upon the proposition that the motorman should have discovered from the actions of the injured person that it was his purpose to cross the track in front of the approaching car, or evidently was not aware of its approach, or the person injured was an infant, or the evidence bearing on the question of his alleged negligence was con-

flicting or of a character from which different intelligent minds might draw different conclusions. These are the features which distinguish these cases from the one at bar; or, to reiterate why the motorman in the present case was not negligent, it appears he was aware that the deceased knew the car was approaching, and in such circumstances as justified him in assuming that she would not put herself in a place of danger by attempting to cross in front of it, when it was in such close proximity that it would be dangerous to do so.

It is also urged that the defendant company had no exclusive or superior right to deceased to the use of the part of the street where she was injured, and that she was but exercising her right to cross the street, and hence, it is claimed, was justified in assuming that the car would not be run upon her. The abstract question of the relative rights of pedestrians and street car companies to the use of the streets over which the latter operate their cars is not involved, for whatever they may be, both having rights upon such streets, both are bound to exercise reasonable care in enjoying these rights, the one to avoid inflicting injuries, and the other to avoid being injured. So that, as we have already pointed out, the rights of the parties to this case must be determined from the part of the record under consideration by ascertaining whether or not the law in this respect was violated.

Counsel for plaintiff seem to predicate negligence of the defendant upon the fact that the motorman did not slow down the car in obedience to the signal of plaintiff to stop and receive her. In the circumstances of this case, we do not think that question is involved, but if it is, the contention is without merit, for two reasons: (1) When the collision occurred, the car was distant more than the width of

Twenty-fifth street from the point where it would customarily stop to receive her, hence deceased was not misled by assuming that it had stopped, or was about to do so; and (2) it appears from the testimony that prior to the time the deceased stepped upon the track, the brakeman was applying the brakes, with the evident purpose of stopping the car at the place where it was required to stop.

It is also contended that it was negligence to not carry the fender nearer the rails, and that the motorman was negligent in not lowering it when deceased stepped upon the track. There is the testimony of one witness to the effect that he noticed the fender shortly after the deceased was injured and he thought it was about one foot above the rails. There is no testimony bearing on the question of how near the fender should be to the rails in practical operation, neither is there any testimony that the motorman did not attempt to lower it, or that he had time to do so after the deceased stepped upon the track. For these reasons we express no opinion on the questions argued by counsel touching the fender, further than to say that no case was made against the company by the testimony under the allegations of the first count on that subject.

Counsel for the defendant insist that the pleadings are not such as to warrant an investigation of the question of whether or not the company was liable because of its failure to avoid injuring deceased after she was in a position of peril. We express no opinion on this question, because, assuming that the first count does present this question, the evidence establishes that it is without merit.

The facts alleged in the second count with respect to the alleged negligence of the persons in charge of the car, in failing to exercise a proper de-

gree of care in extricating the deceased, present an entirely new situation, to be determined without regard to what occurred before; because, in considering the case as made by the second count on this question, and the testimony bearing thereon, the questions of the negligence of the defendant and the contributory negligence of the deceased, considered in disposing of the first count, are entirely eliminated. By the averments of the second count, now under consideration, and the testimony relative thereto, there is involved the application of the well-settled law that, although the contributory negligence of the injured party placed him in a position of danger, yet the defendant, with knowledge of his peril, must exercise a proper degree of care to save him from injury in that situation.

The testimony on the questions now to be considered is far from satisfactory, is not very clear, and, in some respects, is conflicting. There is testimony, however, to the effect that when the car stopped, the deceased was lying on her stomach, with the trunk of her body outside the rails; that when she was extricated her right limb was broken in several places below the knee, and this limb practically severed from her body at the trunk, by a wound which had crushed the pelvic bone at the right side, and the bone of the limb at the thigh; that this was the injury that caused her death; that when the car stopped the front wheel of the front truck of the car was between her limbs, close to the trunk; that the motorman and conductor alighted and after a hasty examination, backed the car; that in doing so, the wheel passed over her, whereby she received the fatal injury to which we have referred.

We cannot believe, as seems to be assumed by counsel for plaintiff, that the action of the motorman

and conductor, in moving the car, was prompted by any thought to wantonly and willfully injure the deceased, nor is there anything in the record to justify such an assumption; but the law demands that in attempting to extricate her they should have exercised that degree of care to prevent further injury which reasonably prudent persons would have exercised under similar circumstances. If they did, then the law will hold them blameless, although they inflicted further injury, but whether or not they did exercise that degree of care which the law imposes, was a question which should have been submitted to the jury for its determination, because there was not only some conflict in the testimony with respect to the position of the deceased, as well as for the further reason that, whether or not, in the circumstances, they exercised a proper degree of care, was a question which different intelligent persons might differ upon. In connection with this question, there would be the further one of whether or not moving the car to extricate deceased inflicted the fatal injury. If the fatal injury was not so caused, then plaintiff's case would fail. The questions presented by the second count, which we have considered, should have been submitted to the jury, under appropriate instructions.

The judgment of the district court is reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.