[No. 5224.]

## NICHOLS v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.

1. **Negligence—Definitions—**The operation of a railway train at a speed prohibited by local ordinance, is negligence.—P. 507.

2. **Trial—Directing Verdict—**On motion to direct a verdict, every fact which the jury, from the evidence, would be warranted in finding, is to be taken as proved.—P. 507.

A traveler, if he attempts to cross where no train is within the distance which, moving at the speed allowed by law, the train will require to reach the crossing, is not negligent in attempting to cross. He is not bound to anticipate that the train will approach at an unlawful speed.—P. 513.

3. **Railways — Highway Crossing — Contributory Negligence of Traveler—**The rights and duties of a railway company and a traveler at a street crossing are reciprocal. No greater degree of care is imposed upon one than the other. The traveler has the right to assume that the statutory signal of the approach of a train will be given, and that trains will not be operated at a prohibited rate of speed; and, if ignorant of any violation of its duty by the railway company, he exercises reasonable care, he is not negligent.—P. 508.

The doctrine of Chicago Co. v. Crisman, 19 Colo. 30, reiterated.—Pp. 507, 519.

4. **Trial—Questions for Court or Jury—**Plaintiff approached the tracks of defendant's railroad where it entered into the public highway. He saw a train nearly three hundred feet away, going upon a switch. Local ordinances limited the speed of trains to ten miles per hour. Plaintiff walked along and near to the track a very few feet and then attempted to cross it; looking back, discovered a train approaching at great speed. He was unable to escape it, and was struck and injured. The train which struck him had been behind that which went upon the switch, and so was hidden from view. Whether he was negligent was left to the jury.—P. 511.

Duty of the engineer approaching a highway crossing expounded.—P. 516.

5. **Contributory Negligence—**It is not imprudent to act upon the assumption that another will conduct himself with due regard to the rights of both.—P. 513.

Defendant may not complain that an act or omission of the plaintiff, induced by defendant's own misconduct, was negligence. —P. 513.

The doctrine of Last Clear Chance stated and amplified. —P. 514.

6. **Evidence—Competency**—In an action for the negligence of a railway company by which a traveler is injured at a street crossing, a local ordinance prescribing the speed of trains is admissible.—P. 519.

7. **Opinions**—Any person of sound mind who has observed railway trains in motion may give an opinion as to the speed of a particular train which he observed.—P. 519.

8. **Relevancy**—Plaintiff, injured at a street crossing by a train approaching at excessive speed, may show that this train was hidden by another as he approached the crossing, in explanation of his failure to see it.—P. 519.

*Error to Denver District Court.*
*Hon. Peter L. Palmer, Judge.*

Messrs. Tolles & Cobbey, for plaintiff in error.

Messrs. Wolcott, Vaile & Waterman, Mr. E. N. Clark, and Mr. W. W. Field, for defendant in error.

Messrs. Devine & Dubbs, Messrs. Dorsey & Hodges, Messrs. Rogers, Cuthbert & Ellis, and Mr. E. E. Whitted, *amici curiae.*

*On Rehearing.*

Mr. Justice Gabbert delivered the opinion of the court:

Plaintiff in error brought an action to recover damages resulting from being struck by an engine operated by the employees of defendant over a track belonging to it within the limits of the city of Denver. At the close of the testimony on the part of the plaintiff, the court directed a verdict for the defendant, upon the ground that the evidence of plaintiff

disclosed that his contributory negligence was the proximate cause of his injury. The plaintiff brings the case here for review on error.

In our former opinion we held that the question of contributory negligence of plaintiff should have been submitted to the jury for determination. Upon petition for rehearing by defendant, our attention was particularly directed to the proposition that from the facts recited in the opinion it appeared that the statement of plaintiff to the effect that he stopped, looked and listened before attempting to cross the track could not be true, and for this reason, and after having decided *Westerkamp v. C., B. & Q. R. R. Co.,* 41 Colo. 290, where that question was involved, we granted a rehearing. We find, however, upon a reexamination of the record that the occurrences immediately preceding the act of plaintiff in crossing the track of the defendant company were somewhat different from those recited in the original opinion. The facts presenting the questions we are called upon to determine are substantially as follows:

Plaintiff was injured in attempting to cross the track of defendant at the intersection of Page street and River avenue. Page street runs east and west, and River avenue north and south. The track of defendant is on River avenue. Plaintiff resided on Page street a short distance east of River avenue; and in the early morning, but when it was perfectly light, started west on Page street. He testified (quoting from the abstract): "About ten or twelve feet before I reached the crossing of Page street with the railway, I stopped. As I came up that way I was facing north, and looked to the south, and near there was a train coming along here (indicating), and leaving this switch here, and switching on to what is called the Lyons track, and so I thought I was perfectly safe and there was no danger in view;

so I walked along, and as I faced north I looked north
that way (indicating), and observed there was noth-
ing. I was looking north on a straight line along
the railroad and I seen there was nothing, and again
started out walking up the track, very close to it, and
looking ahead. At that time the train had moved
and was whistling and ringing the bell, and blowing
off steam with a tremendous roar, and the smoke
from the engine kind of fell to the ground and spread
out and made a kind of fog around that way, so I
could not see distinctly just how the conditions were.
I am speaking now of the engine on the Lyons track.''

In our former opinion we stated that when plain-
tiff was within ten or twelve feet of the track he
looked to the south, the direction from which the
engine came which collided with him, and then
started to walk across the track. It will be observed
from the quotation that this was not correct, in that
he appears to have walked in a northerly direction
along and near the track before starting to cross it.
Continuing his statement regarding his movements
after he had walked along and near the track, he
states in substance, as we understand the record, that
he then started to cross, that it was eight or ten
seconds from the time he first looked until he stepped
between the rails, and when on the track looked to
the south a second time, and discovered an engine
within fifty or sixty feet of him, backing at a high
rate of speed, with the brakes applied so firmly that
the wheels were sliding on the rails and the fire flash-
ing. He endeavored to get off the track, but was
struck, and badly injured. There was no look-out
on the rear of the engine, and no bell was rung or
whistle blown.

From other testimony it appears that this engine
was following closely behind the train being switched
to the Longmont track, and as soon as the switch

was turned, which was immediately after the train cleared the main track, it was run in the direction of plaintiff. The distance from the point where plaintiff was struck to the Longmont switch is 685 feet. The speed of the engine was estimated at from twenty-five to forty-five miles an hour. A witness on behalf of the plaintiff testified that he was standing near the switch, and that after the engine passed that point, about two hundred feet, its speed was not less than twenty-five miles an hour. He also says that its whistle was not blown, or bell rung, and that the engine which had switched the train upon the Longmont track was whistling and blowing off steam. It appears from the testimony that from the point where plaintiff was standing when he looked south, which was in the direction from which the engine came which collided with him, that he could not see that it was closely following the train which was being switched to the Longmont track. From the marks on the rails, which were examined just subsequent to the injury of plaintiff, it appears that the engineer endeavored to stop the engine by applying the brakes and reversing it, at a point about ninety feet distant from the place where it collided with the plaintiff; that it slipped along the track something like one hundred and ten feet beyond the point where plaintiff was struck, or in all, a distance of about two hundred feet. The following diagram will aid in an understanding of the facts. Point 5 is where the plaintiff was struck; point 1 is the Longmont switch. The engine which collided with plaintiff was following the train being switched south of point 1. The distance between points 1 and 5 is 685 feet:

The ordinances of the city prohibited trains from running in the locality where plaintiff was injured at a greater rate of speed than ten miles an hour.   These ordinances also require the defendant company to maintain gates or station a flagman at the Page street crossing.   These requirements had not been observed by the defendant at the time of plaintiff's injury. · It appears that many people are in the habit of crossing the track on Page street. .

Though backing an engine through a city at a speed far in excess of that prescribed by the ordinances and neglecting to give warning of its approach by not ringing the bell or blowing the whistle is negligence, it does not absolve pedestrians from the exercise of care to avoid injury therefrom.— *C., R. I. & P. Ry. Co. v. Crisman,* 19 Colo. 30; *Schmidt v. Mo. Pac. Ry. Co.,* 90 S. W. (Mo.) 136; *Gahagan v. Boston & Maine R. R.,* 70 N. H. 441.

So that, although the record in this case discloses that the defendant was negligent, it is not liable unless such negligence was the proximate cause of the injury to plaintiff.   The trial court held that the negligence of plaintiff was so clearly established that he could not recover, and instructed the jury accordingly.   The first important question to determine is whether or not this ruling was correct.   In so doing, we must assume that the evidence establishes all facts which it tends to prove, and in passing upon it, must make every inference of fact therefrom in favor of the plaintiff which the jury would have been warranted in finding in his favor.—*Donohue v. St. L., I. M. & S. Ry. Co.,* 91 Mo. 357.   If when so considered it appears the jury might have found that plaintiff was not guilty of contributory negligence, which was the proximate cause of his injury, then the ruling of the trial court under consideration was wrong; otherwise, right.   Necessarily every case of

this character must depend upon its own circumstances, and whether or not a proper degree of care has been exercised by a plaintiff is dependent more or less upon the danger reasonably to be anticipated. A pedestrian about to cross a railroad track at a street intersection is required to exercise that degree of care in looking out for approaching trains which a reasonably prudent person would have exercised under similar circumstances. If he does not, and his failure in this respect is the proximate cause of his injury, then he is guilty of contributory negligence, and cannot recover.—*Colo. Central R. R. Co. v. Holmes,* 5 Colo. 197; *Liutz v. Denver City Tramway Co.,* 43 Colo. 58, 95 Pac. 600; *Wichita & Western R. R. Co. v. Davis,* 37 Kan. 743.

Cases frequently arise wherein it becomes the duty of the trial court to determine the question of the negligence of the plaintiff as a matter of law, but those are cases where the testimony will allow no other inference; and hence, it follows that where the question of negligence depends on a state of facts from which different minds may honestly draw different conclusions on that issue, the question must be submitted to the jury for determination.—*Colo. Central R. R. Co. v. Martin,* 7 Colo. 592; *Lord v. Pueblo S. & R. Co.,* 12 Colo. 390; *Solly v. Clayton, ibid.* 30; *D. & R. G. Ry. Co. v. Spencer,* 27 Colo. 313.

There is no doubt about this proposition, but the difficulty arises in applying it. The obligations, rights and duties of railroads and travelers upon intersecting highways are mutual and reciprocal, and no greater degree of care is required of one than the other. True, the railroad company has the right of precedence at such crossings; but both parties, in the exercise of their respective rights, are nevertheless required to exercise reasonable care in enjoying them —the one to avoid inflicting injuries, and the other

to avoid being injured. A person attempting to cross a railroad track at a public crossing in a city has the right to expect that the railroad will give the signals required by law to warn him of the approach of a train, and that it will not be run at an excessive and dangerous rate of speed, and if he is without fault and such neglect and act on the part of the road results in his injury, then he can recover.—*Texas & Pac. Ry. Co. v. Cody,* 166 U. S. 606; *C. & E. I. R. R. Co. v. Boggs,* 101 Ind. 522; *Cleveland, C., C. & St. L. Ry. Co. v. Miles,* 162 Ind. 646.

So that, in determining the degree of care which a pedestrian about to cross a track at a public crossing in a city must exercise, the general rule is, that the pedestrian who does not know of the negligence of a railroad company in running its train at an unlawful rate of speed, and in failing to give the required signals of its approach, and such want of knowledge is not the result of his failure to exercise a reasonable degree of care, he is only required to exercise that degree of care which ordinarily prudent persons will exercise when the railway company is also exercising the care which the law imposes upon it, in the operation of its trains at street intersections.

Plaintiff knew he was approaching a railroad crossing. He says he looked just as the train was clearing the main track, and there was no engine in sight approaching the point where he intended to cross. That the engine was behind this train is undisputed, and it appears that at the time he looked he could not see it because of its position, so that at the time he was approaching the track, and at the time he looked to the south the first time, the track was clear for 685 feet in the direction from which the engine came which collided with him. Within a very short time after he looked he stepped upon the track, and then for the first time discovered the engine ap-

proaching him so near and at such a high rate of
speed that he was unable to avoid being struck by it.
Just how much time elapsed between the time when
he first looked south and when he stepped upon the
track does not appear, but it could not have been
very long, because he says he stopped ten or twelve
feet from the track, then walked along and near it
before attempting to cross, but the time which it
would take the engine to traverse 685 feet, running
at the rate of from twenty-five to forty-five miles an
hour, would only require a few seconds.  It is true
that had plaintiff looked the second time, just prior
to stepping upon the track, he would have discovered
the approach of the engine; but the law only requires
that he should stop, look and listen at the time and
place necessary in the exercise of that degree of care
which an ordinarily prudent person would have exer-
cised in similar circumstances; and whether by
looking only once, at the time and place he did, under
the circumstances narrated, was a proper exercise of
that degree of care which the law imposes, depended
upon other matters which should be taken into con-
sideration.   Where, in case of an injury at a cross-
ing, it appears that the person injured did look for
an approaching train, it does not necessarily follow,
as a rule of law, that he has no remedy because he
did not look at the precise time and place when and
where looking would have been of the most. advan-
tage, and probably avoided the injury.   Many cir-
cumstances might be shown which could properly be
considered by the jury in determining whether he
exercised the degree of care which the law imposes
upon him.—*Rodrian v. R. R. Co.,* 125 N. Y. 526.

Plaintiff had observed a clear track for 685 feet.
The engine approaching him was giving no signals.
The crossing he was about to make was in the city
where the speed of an engine was limited to ten miles

an hour.  Had the ordinance in this respect. been obeyed, plaintiff would have had ample time between the time he looked and the time the engine struck him to have crossed the track in safety.  When he looked to the south for the first time, the track was clear for 685 feet, and apparently within that space of time which would have been sufficient after he first looked to the south for an engine to reach the place where he was about to cross when moving at a lawful rate of speed, he stepped between the rails.  All these matters, it appears to us, were proper to consider in determining whether or not plaintiff was guilty of contributory negligence, and as they are of a character that different intelligent and unbiased minds might honestly reach different conclusions therefrom, on that question the court erred in holding as a matter of law on the record before us that the plaintiff was guilty of contributory negligence which barred his right of action.  As cases illustrating when the facts and circumstances required the question of contributory negligence to be submitted to the jury, we cite the following: *Farrell v. Erie R. R. Co.,* 138 Fed. 28; *Hecker v. Oregon R. R. Co.,* 66 Pac. 270; *Moore v. C., St. P. & K. C. Ry. Co.,* 102 Iowa 595; *Cohen v. Phila. & Reading R. R. Co.,* 211 Pa. St. 227; *St. Louis, I. M. & S. Ry. Co. v. Dillard,* 94 S. W. (Ark.) 617.

Counsel for defendant call our attention to several decisions of this court which they cite in support of their contention that the evidence discloses that plaintiff was guilty of contributory negligence as a matter of law.  These cases are clearly distinguishable from the one at bar.

In *D. & R. G. Ry. Co. v. Gustafson,* 21 Colo. 393, it was held that whether or not the person injured was guilty of contributory negligence was a question of fact for the jury to determine from the testimony,

but that the court erred in instructing the jury to the effect that relying upon the signals of a flagman without looking and listening for approaching trains was the exercise of due care.

In *C. & S. Ry. Co. v. Thomas,* 33 Colo. 517, it was held that the person killed was guilty of contributory negligence because he approached the railroad crossing heedlessly, "without stopping and apparently without looking and listening for the approaching train, and without the slightest manifestation of that reasonable care or common prudence that the circumstances demanded and that the law exacts." From the facts of that case it appeared the deceased had taken no steps whatever to ascertain whether or not a train was approaching over the track he was about to cross, and that the tracks were obscured for a long distance in the direction from which the train came.

In *C. & S. Ry. Co. v. Sonne,* 34 Colo. 206, it appears that the party injured was familiar with the yards of the railroad company, and with their custom of switching cars; that with this knowledge he drove into the yard to get a load of coal from a car, and drove upon the track of the railroad upon which its employees were switching cars, without stopping and listening, and without looking in the direction where he knew they were switching, and while crossing the track, was struck by a loose car running on the track. If he had looked up the track in the direction from which the car was coming before going upon it, he could have seen the car in time to have avoided the injury. It was held that the plaintiff's own negligence contributed to the injury, because he had exercised no care whatever to avoid it.

In some respects the case at bar resembles those cases wherein it has been held that if a railroad company creates an appearance of safety, and a traveler,

influenced by such appearances, enters upon the track at a public crossing, and is injured, he may maintain an action.—*C. & E. I. R. R. Co. v. Boggs, supra; Breckenfelder v. Lake Shore & M. S. Ry. Co.,* 79 Mich. 560; *Behrens v. K. P. Ry. Co.,* 5 Colo. 400 (406).

Such a condition does not relieve the traveler from the exercise of all care, but is a factor to consider in determining whether or not he exercised that degree of care which, under the circumstances, he should have exercised. A person approaching a railroad crossing in a city, with no train in sight for several hundred feet, is not bound to anticipate that one will approach at an unlawful or unusual rate of speed, or that it will approach without giving any signals, and is not chargeable with negligence as a matter of law, in attempting to cross, if, in view of the distance the track seems to be clear, with no approaching train in sight, he would have time to cross before a train, going at a lawful rate of speed, would reach the crossing.—*Farrell v. Erie R. R. Co., supra.* He has the right to assume, when he himself has exercised due care, that in handling its cars the railroad company will act with appropriate care; that the usual signals of the approach of a train will be seasonably given, and that those operating a train will be attentive and vigilant to the extent the law requires. The law does not hold it imprudent in any one to act upon the assumption that another, in his conduct, will act in accordance with the rights and duties of both. A railroad company cannot impute a want of vigilance to one injured by its own negligence if that very want of vigilance is the consequences of an omission of duty on its part, or some act which prevented the party injured from taking the precautions to prevent injury which he otherwise would.—*Donohue v. St. L., I. M. & S. Ry. Co., supra.*

33

The consequences of the act of the defendant in
having its locomotive which collided with plaintiff
concealed behind the train backing on to the Long-
mont switch, and in failing to give warning of its
approach where, shortly before the plaintiff at-
tempted to cross the track, he had looked to the south
and observed it was clear for 685 feet, is an important
question of fact to consider in determining the degree
of care he exercised, as an aid in ascertaining
whether or not such act and omission under the cir-
cumstances tended to throw him off his guard and
lull him into a false sense of security. .

Counsel for defendant contend that the physical
facts conclusively establish that plaintiff did not look
down the track as claimed, because if he had, he
would certainly have seen the engine. He could have
seen the locomotive approaching had he looked be-
fore stepping between the rails, but in view of the
fact that it could have come upon him in the very
short space of time which intervened between the
time when he says he looked and when he stepped
upon the track, the question presented is not whether
he spoke the truth when he says he looked to the
south and observed the track clear to the Longmont
switch, but whether he was negligent in not looking
the second time.—*St. L., I. M. & S. Ry. Co. v. Dillard,*
94 S. W. 617.

Counsel for plaintiff contend that even if it be
conceded that he was negligent in stepping upon the
track, the case should have been submitted to the jury
on the question embraced in the doctrine of "last
clear chance." In *K. P. Ry. Co. v. Cranmer,* 4 Colo.
524, it was held that the plaintiff in a case for per-
sonal injuries may recover notwithstanding his own
negligence exposed him to injury, if the defendant,
after becoming aware of his peril, failed to use ordi-

nary care to avoid injuring him, and such failure was the proximate cause of the injury.

In *D. & R. G. Ry. Co. v. Buffehr,* 30 Colo. 27, this court advanced a step and held, in effect, that this rule was not limited in its application to cases where the peril of the person injured was actually discovered by those at whose hands the injury was sustained, but extended to cases where such peril could have been discovered by the exercise of reasonable care upon their part. The principle underlying these propositions is, that the party who has the last opportunity of avoiding injury must prevent it if, by the exercise of reasonable care, he can do so, and if he does not, it is his negligence in this respect, and not that of the one first in fault, which is the proximate cause of the injury. It is urged by counsel for defendant that as it appears its employees on the engine made every effort possible to bring the engine to a stop after plaintiff stepped upon the track, that they performed their full duty in the premises. In the circumstances of this case this act on the part of these employees is not conclusive that they exercised the degree of care they should to discover plaintiff's peril. The duty to exercise due care to avoid the consequences of another's negligence arises when the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence.—4 Current Law 774. In actions of this character it is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed, but it is enough if, having sufficient notice to put a prudent man on the alert, he does not take such precautions as a prudent man would take on similar notice.—Sher. & Redf. Neg. (5th ed.), §§ 99, 483-484.

Each case of this character must necessarily depend upon its own facts. Ordinarily, an engineer

may presume that one approaching a public crossing over which a train is about to pass is aware of the approaching train, or will not. place himself in a position of imminent peril, but he is not justified in relying upon this presumption if the circumstances are such that, as a reasonably prudent person, it should occur to him that the pedestrian is not aware that a train is approaching the crossing over which he is about to pass. An engineer guilty of negligence cannot blindly assume that a traveler approaching a crossing will not be. Ordinary care on the part of an engineer requires vigilance to guard against a dangerous situation reasonably to be apprehended as well as one actually imminent, so that it becomes the duty of an engineer, when he sees a pedestrian approaching a public crossing under circumstances which would lead him to believe, as an ordinarily prudent person, that such pedestrian is not aware of the approaching train, to take such steps as an ordinarily prudent person would under similar circumstances to prevent the traveler from placing himself in a situation of danger from which it will be impossible to extricate himself.—*N. Y., C. & St. L. R. R. Co. v. Kistler,* 66 O. St. 326; *Waldron v. Boston & Me. R. R.,* 71 N. H. 362; *Morgan v. Wabash R. Co.,* 60 S. W. (Mo.) 195; *Denison & S. Ry. Co. v. Craig,* 80 S. W. (Tex.) 865; *Aldrich v. St. L. Transit Co.,* 74 S. W. (Mo.) 141; *Cleveland, C., C. & St. L. Ry. Co. v. Tartt,* 99 Fed. 369; *Gahagan v. Boston & Me. R. R.,* 70 N. H. 441; *Little v. Boston & Me. R. R.,* 55 Atl. (N. H.) 190; *Cin., Ind., St. L. & Chi. Ry. Co. v. Long,* 112 Ind. 166; *Hanlon v. Mo. Pac. Ry. Co.,* 104 Mo. 381; *Yeaton v. Boston & Me. R. R.,* 61 Atl. (N. H.) 522; *Georgia Midland & G. R. Co. v. Evans,* 13 S. E. (Ga.) 580; *Houston & T. C. R. Co. v. Harvin,* 54 S. W. (Tex.) 629.

The employees of the defendant operating the
engine were backing it towards the plaintiff at a rate
of speed far in excess of that permitted by the ordi-
nances of the city, without blowing its whistle or
ringing its bell.   No warning of its approach to the
Page street crossing had been given.   It had been
concealed behind the train switching to the Longmont
track, and proceeded at once in the direction of plain-
tiff, after that train cleared the main track.   The
engine which switched the train to the Longmont
track was ringing its bell and blowing its whistle, and
making considerable noise by reason of escaping
steam.   This would have the effect of drowning the
noise of the engine which collided with plaintiff.
There was no flagman or appliance at the Page street
crossing to warn plaintiff of its approach.   Plaintiff
must have been near this crossing and walking near
the track when the engine passed the Longmont
switch.   The view from that point where he then was
appears to have been unobstructed.   It is evident
that plaintiff stepped upon the track without being
aware of the proximity of the locomotive.   He had
given no indication that he was aware of its approach.
He was in peril when he approached the track with-
out looking the second time to the south before he
stepped upon it.   True, it was not imminent until he
stepped upon the track or approached it near enough
to be struck, but the employees of defendant on the
engine had that knowledge of his movements and
proximity to the track which the exercise of reason-
able care would have imparted.   From this knowl-
edge they may not have been able to determine defi-
nitely that he was approaching the track without
knowledge of the approach of the engine, but if from
his behavior and all the circumstances it should have
occurred to them, as reasonably prudent and intelli-
gent persons, that he did not, then they had notice

of the danger to which he was exposed, and it would
have been their duty to take such steps as reasonably
prudent persons would and could, under similar cir-
cumstances, to prevent the engine striking him if, in
the exercise of such care and taking such steps his
injury could have been avoided.

We think the court erred in taking the case from
the jury. We must not be understood, however,
from any language employed in the opinion, as hold-
ing that plaintiff was or was not guilty of contribu-
tory negligence, or that he could recover, notwith-
standing his negligence, because the defendant had
not exercised a proper degree of care to prevent in-
juring him, after knowledge of his peril, or such
knowledge of his peril as the exercise of proper care
by the employees operating the engine would have
imparted, but that the case should have been sub-
mitted to the jury under appropriate instructions on
both these questions, as it stood when the motion of
defendant for a directed verdict was interposed and
sustained.

Counsel for defendant suggest that the complaint
does not state facts sufficient to invoke the principle
involved in the doctrine of ''last clear chance.'' We
are of opinion that the ultimate facts pleaded tender
an issue on this question.

We shall briefly notice some of the other errors
assigned on behalf of the plaintiff. It is claimed
that ordinances of the city requiring flagmen to be
stationed or gates or other safety appliances placed
at the crossing on Page street were excluded. It is
not altogether clear from the record before us
whether these ordinances were excluded or admitted,
but however that may be, they were competent if
properly authenticated.—*D. & R. G. Ry. Co. v. Ryan,*
17 Colo. 98.

Error is also assigned upon the ruling of the court in not permitting the wife of the plaintiff to testify as to the speed of the engine. She stated that she had lived in the vicinity of the Page street cross-ing for several years, and had observed the rate of speed at which trains and engines passed this point. She was with her husband at the time he was injured. She did not qualify as an expert in the matter of speed of trains, but any person of sound mind and judgment who has observed trains running, and has an opinion thereon, based upon seeing the train at the time in question, is a competent witness upon the speed, the jury being the judges of the weight to be attached to the testimony of such witness.

Plaintiff offered to show by the witness Bennett the position of the engine when the train was backing on to the Longmont track. This offer was excluded. This was error, as such testimony would tend to explain why plaintiff did not see the engine when he looked to the south for the first time.

In support of the petition for rehearing it was strenuously urged that the reversal of the judgment of the trial court would result in overturning our own decisions, to the effect that a violation by a rail-road company of ordinances of a city with respect to speed or sounding of bells or whistles, or the pro-tection of crossings does not protect the plaintiff against his own contributory negligence, and that it would establish the proposition that a person ap-proaching a railroad crossing need not look along the track at all, because he is entitled to rely upon the presumption that the defendant will obey the ordi-nances and give timely warning of the approach of a train. In assuming that such will be the result, counsel for defendant are clearly mistaken. We do not reverse or modify our previous decisions on these subjects in the slightest degree. On the contrary, we

adhere to what was said in *Ry. Co. v. Crisman, supra* —that the failure to ring the bell or blow the whistle at the crossing, though required by law, will not render the company liable unless that be the proximate cause of the injury, and there be no such negligence by the plaintiff as will prevent his recovery. Neither do we recede from the proposition so often announced, that one about to cross a track at a street intersection must exercise a proper degree of care to avoid injury; but hold that, in the circumstances of this case, the question of whether or not plaintiff exercised that degree of care was one which should have been submitted to the jury for determination.

We adhere to the conclusion announced in the original opinion; but as the facts stated therein are slightly different from those now considered, and the questions discussed are also different, that opinion will be withdrawn.

The judgment of the district court is reversed and the cause remanded for a new trial in harmony with the views expressed in this opinion.

*Reversed and remanded.*

Decision *en banc.*

Mr. Justice Campbell concurs in reversal.

Mr. Justice Bailey dissents.

Mr. Justice Maxwell not participating.